NICKERSON, Trustee, *v.* MEACHAM and others.

*(Circuit Court, D. Nebraska.* January, 1883.)

1. EQUITY—BONA FIDE PURCHASER—CONSTRUCTIVE NOTICE—CONVEYANCE OF MORTGAGED PREMISES.

The holder of a mortgage surrendered the same upon the receipt of a quit-claim deed of the land from the mortgagor. The mortgagor, without knowledge of the mortgagee, had previously deeded the same land to his daughter, who, prior to the surrender of the mortgage by the mortgagee, and the conveyance of the mortgaged land by her father to the mortgagee, deeded the same to a third party, in consideration of certain promissory notes of doubtful value. *Held,* that if the conveyance of the daughter to the third party was without consideration, it should be set aside, and that the mortgage, which had been canceled in ignorance of the fact that the mortgagor had parted with the title, should be enforced against the land. It was the duty of the holder of the mortgage to examine the record for conveyances by the mortgagor before taking a quitclaim deed, and as against a *bona fide* purchaser for value he would be without remedy; but if the party claiming to be a *bona fide* purchaser for value is proven not to be such, he has no equities, and there is nothing to prevent a court of equity from disposing of this case upon the equities as they exist between the mortgagor and mortgagee.

2. SAME—BONA FIDE PURCHASER—PAYMENT BEFORE NOTICE OF EQUITIES—PROOF.

A party relying upon the defense that he is a *bona fide* purchaser, entitled to hold notwithstanding a prior equity, must establish his defense by proof. It is an affirmative defense. The statement of a consideration in the deed is not sufficient, but actual payment before notice must be shown.

3. SAME—PRESUMPTION AS TO VALUE OF PROMISSORY NOTES.

As a general rule, the law will presume that a promissory note, even if past due, is worth its face in money; but this is only a presumption which arises in the absence of direct proof as to value, and may be overcome by comparatively slight proof in contradiction, especially when the paper is old, dishonored, or outlawed.

In Equity. On exceptions to master's report.

The principal matter in controversy in this case is as to the validity of a conveyance of certain lands from respondent Mary Meacham to respondent H. H. Blodgett, of date February 7, 1880. The title to the land was, prior to February 8, 1877, in respondents Stephen A. Meacham and Nancy, his wife, who on that day executed a mortgage thereon to A. Otis Evans, to secure the payment of $2,700, with interest and attorney's fees. The purpose of this suit is to foreclose said mortgage; and in order to make the foreclosure effectual, complainant prays the cancellation of the conveyance above referred to, and that the satisfaction of said mortgage hereinafter mentioned may be set aside.

On the twenty-fifth day of September, 1877, said Stephen A'. Meacham, then the owner of said land, his wife not joining, conveyed the premises to his daughter, the respondent Mary Meacham, excepting from the covenant of warranty the mortgage above named. On the twelfth of October, 1878, the said A. Otis Evans, through his agent, having no knowledge of the conveyance from Stephen A. Meacham to Mary Meacham, took from the said Stephen A. and Nancy, his wife, a quitclaim deed in the name of B. L. Harding for the land in question, and as the sole consideration therefor delivered up as satisfied the aforesaid notes and mortgage for $2,700.

On the seventh of February, 1880, the respondent H. H. Blodgett received a conveyance of the land in controversy from said Mary Meacham, the consideration in the deed being expressed as $4,200. This last transaction, which is the subject of the present controversy, was in this wise: Blodgett gave to said Mary Meacham promissory notes against various parties, amounting to $4,200, as the consideration for the whole of the land, and immediately agreed with her to reconvey to her one-half of the land, in consideration that she should allow him to take back one-half of the notes to be selected by him. Accordingly, after receiving the conveyance, Blodgett reconveyed to Mary Meacham the undivided half of the land, and selected and took back one-half of the notes. It is charged that this transaction between Blodgett and Mary Meacham was fraudulent, and also that it was without consideration, the notes left in her hands after returning the selected one-half to him, having been, as is alleged, entirely worthless.

The case has been twice before the master. In his first report he found, as a fact, that the notes given by Blodgett to Mary Meacham, as a consideration for said land, were old notes, uncollectible and worthless, and nearly all, if not quite all, past due; and that not a dollar has ever been collected thereon. The case was recommitted to the master to further investigate the question of the value of said notes, with leave to parties to produce further proof. After taking a large amount of additional evidence the master has filed a second report, in which he finds as facts (1) that the consideration for the conveyance in controversy was grossly inadequate; (2) that he cannot find that any of the notes have been collected or paid.

When the case came up for hearing upon exceptions to this latter report, after the oral argument, the court directed counsel to file briefs upon the whole case, but to give special attention to the question. what, under the circumstances of this case, is the presumption as

to the value of the notes turned over by Blodgett to Mary Meacham in consideration for the conveyance, in the absence of any direct proof upon the subject? Elaborate briefs have accordingly been filed.

*J. L. Webster,* for complainant.

*Walter J. Lamb, G. M. Lambertson, J. E. Philpot, J. C. Crooker,* and *H. H. Blodgett, pro se,* for respondents.

McCRARY, C. J. If the conveyance from Mary Meacham to H. H. Blodgett was without consideration, it should be declared void and set aside, and the mortgage for $2,700 should be enforced against the land, since it was undoubtedly canceled in ignorance of the fact that the mortgagor had parted with the legal title and was no longer able to make a valid conveyance. It is true, as respondents' counsel have said, that it was the duty of the holder of the mortgage to examine the record for conveyances by the mortgagor before taking a quitclaim deed from him and canceling the mortgage; and it follows that, as against a *bona fide* purchaser of the land for value after the cancellation of the mortgage, he is without remedy. But if Blodgett is not such a purchaser he has no equities, and there is nothing to hinder a court of equity from disposing of the case upon the equities as they exist between mortgagor and mortgagee. As between them, complainant is entitled to relief, as the cancellation of the mortgage was the result of a mistake on the part of the mortgagee, and of a palpable fraud on the part of the mortgagor, who of course knew that he had conveyed the land to his daughter, and that he had no power to convey it a second time. Our inquiry must therefore be confined to the question, was Blodgett a *bona fide* purchaser for value? The proof leaves this question in doubt. All that clearly appears is that Blodgett turned over to Mary Meacham a number of promissory notes, all of which were past due, and some of which were certainly worthless. Whether any of the notes turned over by him were of any value, is a question which cannot be clearly settled upon the evidence in the case; and it must, therefore, depend upon the question whether the law raises a presumption, in the absence of proof, that the notes were of value. The respondent Blodgett rests his defense upon the claim that he is a *bona fide* purchaser of the land in question without notice of the prior equities existing in favor of the holder of the mortgage. A party relying on the defense that he is a *bona fide* purchaser, entitled to hold notwithstanding a prior equity, must establish his defense by proof. It is an affirmative defense. The statement of a consideration in the deed is not sufficient, but actual payment before notice must be shown. The facts giving the right of protection must be al-

leged and proved. Abb. Tr. Ev. p. 715, § 38, and cases cited. The same rule is laid down in the case of Boon v. Chiles, 10 Pet. 177.

The burden being upon the respondent, Blodgett, to make out his defense by showing affirmatively that he is a bona fide purchaser for value, he claims to have discharged it by showing that he turned over the notes in question in payment for the land, and without showing affirmatively that the notes were of value. As a general rule, the law will presume that a promissory note, even if past due, is worth its face in money; but this is only a presumption which arises in the absence of direct proof to establish the value of the paper, or of circumstances sufficient in themselves to rebut the presumption. Indeed, this presumption is much stronger where the paper is not yet due, than it is where it is overdue and dishonored; but it prevails in either case.

The question here is whether the circumstances are such as to rebut this presumption, and to throw upon respondent Blodgett the burden showing that the notes were of value, or, in other words, that he paid value for the land.

There are several circumstances tending very strongly to throw suspicion upon the entire transaction, and, when they are all considered together, they are of such a character as ought, in my judgment, to overcome the presumption that the notes, or any of them, were of value. These circumstances may briefly be stated as follows:

1. The purchase was made by Blodgett without any investigation as to the title to the land. It is fair to presume that if he had been paying what he regarded as a fair price, purchasing in good faith, he would have looked into the record to ascertain the condition of the title.

2. Equally suspicious is the fact that Mary Meacham accepted the notes, all past due and some barred by the statute of limitations, without inquiry as to the solvency of their makers, and without investigation of the question whether they were good or not. It must be considered very remarkable indeed that a person of mature years and ordinary intelligence would, in good faith, sell and transfer a large body of valuable land for such a consideration, and without knowing or inquiring whether she was receiving anything of value or not.

3. Still more remarkable and suspicious is the circumstance that the parties agreed that after the delivery of all the notes by Blodgett to Mary Meacham, and after a conveyance from the latter to the former of all the land, and as a part of the same transaction, Blod-

gett should reconvey to Mary Meacham one-half of the land, and should select and take back from her one-half of the notes. It is impossible to understand why all this was done, if it was not for the very purpose of giving him the opportunity to take back all the notes that were of any substantial value, and leave in her hand only those that were practically worthless.

4. The court cannot overlook the fact, which appears in the testimony of Blodgett, that he is unable to give the name of a single one of the makers of the notes who is or has been, since the transaction in question, solvent in the sense of having property subject to execution. When the case was referred to the master, the court supposed that a list of the notes transferred could be readily obtained; that the names and places of residence of their makers could be furnished, either by Blodgett or Mary Meacham; and that thereby the complainant would be furnished with information upon which to prosecute an investigation as to the value of the notes. But it seems that after a long investigation, and the taking of testimony covering hundreds of pages, there is even yet some doubt as to who the makers of the notes were, and as to where they are to be found. Add to this the fact that no effort whatever has been made to collect any of the notes, and that not a dollar has been paid upon any one of them during a period of now nearly three years, and it must be admitted that all the circumstances, taken together, are such as to cast great doubt upon the question of the *bona fides* of the transaction, and of the value of these securities.

At the hearing on exception to the master's second report, the court was of the opinion that the case must turn upon the question, whether these facts and circumstances were sufficient to overcome the presumption that the promissory notes were worth their face in money. That such is the general presumption, in the absence of suspicious circumstances and in the absence of proof, seems to be admitted; but it is a presumption which may be overcome by comparatively slight proof, especially in a case where the paper is old, dishonored, and some of it barred by limitation. The law raises the presumption of value only in cases where there is no evidence upon which to found a contrary presumption. If the facts are such as to create a strong doubt of the integrity of the transaction and as to the value of the paper, the burden of showing that the paper was of value will be thrown upon the party asserting that fact. This rule is especially applicable to the present case, where the facts are, or ought to be, known to the respondent Blodgett, and there the com-

plainant, after diligent effort, seems to have been unable to ascertain them.

It is certainly not too much to say upon this record, and the evidence before the court, that the evidence on the part of Blodgett in respect to the payment of the consideration stated in the deed is unsatisfactory, and that such proof was vital in order to uphold the deed, surrounded as it is in other respects with suspicion. This being so, it must be held that the burden of showing that the paper was of value, and that Blodgett was a *bona fide* purchaser, rests upon him. Such, in substance, is the doctrine announced by the supreme court of the United States in two cases at least. *Clements* v. *Moore*, 6 Wall. 299; *Clifton* v. *Sheldon*, 23 How. 481.

The result is that there must be decree for complainant in accordance with the prayer of his bill, and it is so ordered.