LEWIS, RESPONDENT, *v.* LINDLEY, APPELLANT.

[Submitted March 24, 1897. Decided May 3, 1897.]

"A," the holder of a first mortgage, and "B," the holder of a second mortgage on real estate, entered into an agreement whereby the mortgages were cancelled and a new note and mortgage were given to "B" for the entire indebtedness, and "B" gave his note to "A" for the amount due him, secured by the new note and mortgage as collateral; thereafter an agreement was made by the terms of which the mortgage and note to "B" were returned and cancelled, the real estate was conveyed to "B," who agreed that the property should remain as security for "B's" debt to "A," and if he could not borrow the money on a note and mortgage to pay this debt, he would execute a mortgage to "A" as security therefor. *Held,* that upon the transfer to "B" a constructive trust was raised in behalf of "A," and that "B" held the title to the property subject to the equitable lien of "A."

SAME—*Purchaser from Trustee—Bona Fides—Burden of Proof.*—A wife who purchases from her husband real estate which is subject to an equitable lien, takes the property subject thereto unless she is a purchaser in good faith and without notice of the lien; and the burden is upon her to show good faith and want of notice.

*Appeal from District Court, Gallatin County. F. K. Armstrong, Judge.*

ACTION by Thomas Lewis against Joseph M. Lindley, and Rachel M. Lindley to establish and enforce an equitable lien on land. From a decree for plaintiff, and an order denying a new trial, defendants appeal. Affirmed.

Statement of the case by the justice delivering the opinion.

Appeal from a judgment and an order overruling defendants' motion for a new trial.

The allegations of the complaint substantially are that the defendants and appellants are husband and wife; that on September 12, 1888, one Susan E. Rouse owned a large amount of real estate, described in the complaint, situate in the county of Gallatin, Montana; that on said 12th day of September, 1888, said Susan E. Rouse and her husband executed to one George Nichols their promissory note for $5,500, due in five years after date, with interest, and to secure the payment of said promissory note the Rouses executed a mortgage on the real estate referred to; that said mortgage was the first lien upon said real estate, and was duly filed for record on September 13, 1888; that on July 7, 1890, this plaintiff and respondent, Lewis, purchased the said promissory note and mortgage, which said note was transferred by Nichols to the plaintiff, and the mortgage securing the note was duly assigned to plaintiff by Nichols; that about August 17, 1891, the appellant Joseph M. Lindley was the owner and holder of certain other notes made and delivered to him by the Rouses, aggregating $11,600, which notes were also secured by second mortgage upon the property which the Rouses had theretofore mortgaged to Nichols, and which mortgage Nichols had assigned to this plaintiff and respondent, Lewis; that the defendant Joseph M. Lindley, to more fully secure his claim and notes against the Rouses, and at the same time to preserve the lien that Lewis had upon the real estate referred to for the security of his note, made an agreement with Lewis by which it was understood and agreed that plaintiff, Lewis, should release and cancel the mortgage securing the note of $5,500 in consideration of the defendant Joseph M. Lindley executing to plaint-

iff, Lewis, his note for $5,500, and giving to the plaintiff, Lewis, as collateral security therefor, a note for $19,659, made by the Rouses to the defendant Joseph M. Lindley, which said note should include the entire sum due from the Rouses to the plaintiff upon the $5,500 note, and which was to be secured by first mortgage to be executed by the Rouses to the defendant Joseph M. Lindley upon the property already referred to and described in the complaint; that according to this agreement the Rouses made and delivered their note for $19,659, dated August 17, 1891, to Joseph M. Lindley, due on or before August 17, 1893, which said note included the amount due the respondent, Lewis, and the said Joseph M. Lindley by the Rouses, and to secure the payment of said note the Rouses executed a mortgage upon the aforesaid property to the defendant Joseph M. Lindley, which mortgage was recorded on August 24, 1891; that defendant Lindley, in accordance with the terms of the agreement just referred to, made and delivered the said note for $5,500 to the plaintiff, Lewis, and at the same time transferred to him the note of the Rouses for $19,659 as collateral security for the $5,500 note, and thereupon plaintiff cancelled the mortgage securing the note for $5,500; that prior to August 17, 1893, the defendant Lindley paid the interest on the said $5,500 note and $1,400 of the principal thereof, and that on August 17, 1893, there was still due on the said note $4,100; that on said August 17, 1893, Joseph M. Lindley executed his note to this plaintiff, Lewis, for $4,100, in renewal of the balance due upon said $5,500 note, the last-mentioned note being due one year after date: that the plaintiff still owns the said note, and that nothing has been paid thereon except $213.50, paid November 7, 1894; that it was agreed between plaintiff, Lewis, and the defendant Joseph M. Lindley at the time of the execution of the $4,100 note just referred to, that the note for $19,659, secured by mortgage and endorsed by Lindley to Lewis, should continue and remain, as theretofore, in the hands of plaintiff, Lewis, as collateral security for the payment of said note of

$4,100, and the note for $19,659 did remain in plaintiff's possession as collateral for the payment of said $4,100 note until surrendered to the defendant Joseph M. Lindley for purposes hereinafter specified; that about September 28, 1894, the defendant Joseph M. Lindley represented to the plaintiff, Lewis, that he (Lindley) was about to effect a settlement and adjustment of the $19,659 note due by the Rouses to him, the said Lindley, and, to avoid foreclosure and sheriff's sale, he, the defendant Lindley, had agreed with the Rouses that they were to make to him (Lindley) a warranty deed for the property described in their mortgage securing said note, upon the condition that Joseph M. Lindley would surrender to them the said note of $19,659, and cancel the mortgage securing the same; that defendant Lindley agreed with the plaintiff at that time that, in consideration of Lewis surrendering to him (Lindley), for delivery to the said Rouses, the said $19,659 note held by him as collateral, as aforesaid, he (Lindley) could and would cause to be executed to himself—that is, Joseph M. Lindley—a warranty deed from the Rouses, conveying to him all the property described in the said mortgage, and immediately after such conveyance by the Rouses he (Lindley) would liquidate and pay the $4,100 note, with interest, or, in default thereof, would execute to this plaintiff, Lewis, a mortgage upon the property so conveyed to him (Lindley) by the Rouses as security for the said $4,100 note, and cause the said mortgage so to be executed, to be executed and signed by the defendant Rachel M. Lindley, and that said property should continue to be security to the plaintiff, Lewis, for his debt; that pursuant to the terms of this agreement last mentioned, and relying upon the representations and agreements of the defendant Joseph M. Lindley, and without any intention of releasing or waiving the lien that Lewis, the plaintiff, had on the property described in the mortgage, he (Lewis), on September 28, 1894, surrendered to Joseph M. Lindley the $19,659 note; that on September 27, 1894, the Rouses made and delivered to Joseph M. Lindley their warranty deed conveying to him all the real estate described in the mortgage

heretofore referred to, excepting about fourteen acres thereof, and that about the same day Lindley surrendered and transferred to the Rouses the $19,659 note in consideration of the deed, and afterwards, about November 15, 1894, Lindley released and cancelled the mortgage securing the said $19,659 note,—all of which, plaintiff alleges, was done by Lindley in violation of his said agreement with plaintiff, Lewis, and with the intention of defrauding and cheating Lewis out of his said debt and his security therefor upon the said lands described in the mortgage given to secure the $19,659 note.

Plaintiff further alleges that about October 25, 1894, the defendant Joseph M. Lindley, disregarding his promises and agreement made as aforesaid, together with his wife, Rachel M. Lindley, for the purpose of defrauding and cheating plaintiff out of his debt due him on the $4,100 note, and his just lien as security therefor against the real estate described in the mortgage securing the $19,659 note, and without any consideration therefor, and with full knowledge on the part of both defendants of the debt of $4,100 and of the lien as security therefor, conveyed all the real estate included in the mortgage, excepting fourteen acres, omitted as heretofore mentioned, together with all other real estate owned by the said Joseph M. Lindley, to one B. F. Osborne, and the said Osborne on the same day reconveyed all of said property so conveyed to him to this defendant Rachel M. Lindley, wife of Joseph M. Lindley, without any consideration therefor, and for the purpose of cheating and defrauding the creditors of Joseph M. Lindley, and especially this plaintiff, and that the said Osborne and both of the defendants intended to cheat the creditors of Joseph M. Lindley; that during the time which elapsed between the surrender of the $19,659 note by this plaintiff, Lewis, to the said Joseph M. Lindley, and the execution and delivery of the deeds to Mrs. Lindley, and both before and after the making of the conveyances to Osborne and by Osborne to Mrs. Lindley, the said defendant Joseph M. Lindley represented to this plaintiff, Lewis, that he expected to and would pay the $4,100 note if he could secure the money by mortgage

upon the realty described in the said $19,659 mortgage, and that, if he failed to borrow said money, he would execute a mortgage to this plaintiff to secure the said $4,100 note, and that he did pay during the said time the sum of $213.50 to plaintiff, and that plaintiff relied upon his representations and statements made during said time and at the time of the surrender of said note as aforesaid, and believed the same to be true, until November 17, 1894, when he accidentally discovered the conveyances to Osborne by the defendants, and that of Osborne to Mrs. Lindley, and that said discovery was the first knowledge of said conveyances, or of the intentions of said Lindley, which came to plaintiff; that immediately upon said discovery he demanded of Joseph M. Lindley the payment of the $4,100 note, or that he execute and cause to be executed to the plaintiff a mortgage upon the realty described in the $19,659 mortgage, pursuant to the agreement between plaintiff and the defendant Joseph M. Lindley as hereinbefore set forth, but that Lindley failed to comply with the demand; that plaintiff also demanded of Rachel M. Lindley that she join her husband in the execution of the mortgage to plaintiff, or otherwise secure the note for $4,100, pursuant to the terms of the agreement, but that she refused; and that Joseph M. Lindley has no other property than this real estate subject to execution, and is insolvent.

The plaintiff asked for a judgment—First, for $4,100 and interest due on the said note, and for attorney's fees provided for in the note; second, that the court set aside the conveyances from Joseph M. and Rachel M. Lindley to Osborne, and from Osborne to Mrs. Lindley, and that the property be declared subject to the lien of the judgment or decree rendered in this suit; third, that plaintiff be decreed to have an equitable lien to the amount of his judgment and costs against the property of Joseph M. Lindley, described in the mortgage executed to him by the Rouses to secure the $19,659 note; fourth, that the satisfaction of the mortgage made by the Rouses to Lindley to secure the $19,659 note be vacated, and that the mortgage be held to be valid for the benefit of plaintiff, Lewis, and be

declared a lien prior to the lien of the defendants or all persons claiming through them, and that the mortgage be foreclosed, and the equity of redemption of defendants be barred; and, fifth, that the usual order relating to the foreclosure of real estate mortgages be made, and a deficiency judgment be docketed, and for further relief.

Defendant Rachel M. Lindley answered by denying on information and belief that the plaintiff, Lewis, about September 28, 1894, surrendered to her husband the $19,659 note pursuant to any agreement, as pleaded by the plaintiff, or that when the plaintiff delivered the said note to her husband he did so without intending to release his lien of the mortgage, or that when the release of said mortgage for $19,695 was made it was in violation of any agreement between her husband and plaintiff, Lewis, or that when the said acts were done it was with the intention on the part of her husband of cheating or defrauding plaintiff out of his debt or his security therefor.

She then sets up that about February 1, 1882, she loaned her husband $3,200, and in January, 1884, loaned him $3,500 more, both of which said sums were to be repaid to her by her husband upon her demand, with interest, and that the contracts for repayment of said sums were in writing, but were not in her possession at the time of filing her answer; that said sums of money so loaned to her by her husband was money which belonged to her before she married Lindley, and was claimed by her to be her separate property, but that her husband never paid the money back to her until about October 25, 1894, at which time there was due by her husband to her the full sum of $17,754; that about October 25, 1894, it was agreed between her husband and Osborne, as trustee for them, and in consideration of her releasing all her claims against her husband on account of said sums of money so due her as above stated, and surrendering to him the evidences of said debts, that he would convey to her all the property described in the deed from Osborne to her, and certain other property; that she agreed to take the property conveyed in said deed in full

payment of the debts due to her by her husband, and that she took the same, and since October 25, 1894, the said property has been in her name as her separate property; that when she took the deed from Osborne she did not know, and not for a long time thereafter, of any claim or right of this plaintiff to the said property, or any part thereof, or any mortgage being thereon, or of any circumstances under which her husband had secured said property, or any part thereof; and that she did not take the same in any fraudulent manner, but in good faith, and for a valuable consideration, and without any notice of plaintiff's pretended right thereto.

Joseph M. Lindley also answered, and denied that at the time the $19,659 note was surrendered to him by the plaintiff, Lewis, it was agreed that he would immediately, upon a conveyance being executed and delivered to him by the Rouses, pay the $4,100 note, or that, in default of payment, he would execute a mortgage to plaintiff upon the property so conveyed to him by the Rouses; and denied that he ever agreed that any such mortgage should be executed by him and his wife, Mrs. Lindley. He then alleges that, when the $19,659 note was surrendered to him, it was the intent of plaintiff, Lewis, to release to him (Lindley) all Lewis' claims to any of the property described in the mortgage securing said note, in consideration of which he (Lindley) agreed that he would either pay the note of $4,100, or he would endeavor to raise the money on the property covered by the mortgage securing the $19,659 note, or so much property as would be sufficient to raise said sum, and that plaintiff agreed to assist him in the negotiation of such a loan, and that it was further agreed that, if the money could not be paid by the defendant Lindley, or the loan negotiated, this defendant would secure the payment of said sum in some way satisfactory to the plaintiff, and that he (Lewis) would give him a reasonable time in which to pay said sum. Defendant Lindley denied that it was ever agreed that Lewis' lien upon the property described in the mortgage should be continued or be of any effect whatever, but alleges that the property was to be secured so that he could carry out

and effect a loan for the purpose of paying the debt to plaintiff, Lewis. Lindley denied that the transfer by the Rouses to him, or that the surrender of the $19,659 note, or that the release of the mortgage securing said note, or that any of such acts were done in violation of any agreement with the plaintiff, or for any purpose of cheating or defrauding him out of his debt or security therefor upon the land described in the $19,659 mortgage; denied that in disregard of his promises or agreement, or at all, or that for the purpose of cheating or defrauding his creditors, he executed the deed to Osborne, or that the transfer from Osborne to Rachel M. Lindley was in any way fraudulent, but alleges the facts to be that the conveyances were made to Osborne, and by Osborne to Mrs. Lindley, for the purpose of vesting in her the title of said real estate; and that the real consideration for said conveyances was money, separate property of Mrs. Lindley, which had been paid to him by her in a sum exceeding $16,000, including interest, and that the transfers were made in good faith.

The replications denied the new matter in the answer. The case was tried to the court without a jury. The findings of fact conformed to the allegations of plaintiff's complaint generally, and it is unnecessary to incorporate them fully in this statement.

After making findings sustaining plaintiff's averments to the effect that plaintiff and defendant J. M. Lindley entered into a contract by which it was understood that the plaintiff should release and cancel the Nichols mortgage, in consideration of which Lindley would execute his note to plaintiff for $5,500, and give to plaintiff as collateral security therefor the $19,659 note made by the Rouses, the court also found that pursuant to said contract the $19,659 note was delivered and endorsed to plaintiff as collateral, as averred in the complaint; that thereupon plaintiff, Lewis, released the Nichols note and mortgage securing the same.

It was further found that at the time of the execution and delivery by Lindley of the note of $4,100 to plaintiff, it was agreed that the $19,659 note secured by mortgage should re-

main, as theretofore, in the hands of Lewis as collateral security for the $4,100 note, and it did so remain in the hands of Lewis until September 28, 1894; that about September 28, 1894, Lindley represented to plaintiff that he had effected a settlement of the Rouse indebtedness, and that to avoid expenses of foreclosure of the mortgage to secure the $19,659 note he (Lindley) had agreed with the Rouses that they should make a warranty deed to him for all the property described in the mortgage, except a small tract, upon condition that he (Lindley) would surrender to the Rouses their note of $19,659, and cancel the mortgage; and that to finally perfect this settlement, and secure to himself the advantages, and get the deed for the property, it would be necessary for him to obtain from Lewis the said $19,659 note; that Lewis at first objected, but it was finally agreed between them that, in consideration of plaintiff's surrendering to defendant Lindley, for delivery and surrender to the Rouses, the note then held by plaintiff as collateral security, plaintiff's lien on the real estate described in the said mortgage should be continued in force, and the property should continue to be security to plaintiff for his debt against Lindley, and Lindley could and would procure to be executed and delivered to himself a warranty deed from the Rouses conveying to him the real estate described in the $19,659 mortgage, and that upon the execution and delivery to him of said deed Lindley would, if he could raise the money upon the security of said real estate, liquidate and discharge the said note of $4,100 and interest, and on failure to raise the money for that purpose, would execute to plaintiff a mortgage on said property as security for said note, which mortgage should be as complete and perfect as that which Lewis then had; that pursuant to the terms of said agreement plaintiff, Lewis, on the same day, relying upon the representations and agreements of Lindley, and without any intention of releasing or waiving his lien upon the property described in the mortgage, surrendered to Lindley and gave up the promissory note for $19,659 for purposes heretofore specified, and that about the same day the Rouses executed their deed to Lindley, con-

veying to him all the property described in the mortgage securing the $19,659 note, except about fourteen acres thereof; and that on November 15, 1894, Lindley released the mortgage securing said $19,659 note, but, except the payment of $213.50, made November 7, 1894, Lindley has never paid the plaintiff.

The court also found that, for the purpose of defrauding the plaintiff out of his just debt, the transfers were made to Mrs. Lindley, through Osborne, and that at the time of the conveyance to Mrs. Lindley by Osborne, Mrs. Lindley had full knowledge of the debt of $4,100 and interest due from her husband to Lewis, and of the plaintiff's lien upon the real estate described in the $19,659 mortgage as security therefor. There was a finding also to the effect that in February, 1882, and in 1884, Mrs. Lindley had loaned the aggregate sum of $6,700 to her husband, to be repaid to her by him on demand, but that she never demanded payment until after the surrender of the $19,659 note by Lewis to Lindley, and that Lindley never paid anything to her until the Osborne transactions, and that no consideration passed from Mrs. Lindley to Lindley for the transfer to Osborne except the satisfaction of the old debts due by Joseph M. Lindley to Mrs. Lindley.

The court also found that frequently between the time of the surrender of the $19,659 note on September 28, 1894, by Lewis to Lindley, and the transfer of the real estate to Mrs. Lindley on October 25, 1894, Lindley repeatedly told plaintiff that he would pay the $4,100 note by borrowing money by mortgage upon the real estate, or, if he could not do so, he would execute a mortgage to Lewis, and he did during this period of time pay $213.50 interest due on the note, and that plaintiff relied upon the promises of Lindley made at the time of the surrender of the $19,659 note, and believed the same to be true, until November 17, 1894, when he accidentally learned of the Osborne transfers, and that immediately upon receiving this information he demanded of Lindley that he pay the note or execute a mortgage as had been agreed upon, and demanded of Mrs. Lindley that she join in a mortgage to secure the

note, but that both of them failed to respond, and that Lindley has no other property than this real estate.

As conclusions of law the court held that Lewis was entitled to a judgment against Lindley for $4,100 and costs, and also to a decree subjecting the real estate described in the $19,659 mortgage to the lien of said judgment, and that the indebtedness of Lindley to his wife was barred by the statute of limitations; that Mrs. Lindley was not a *bona fide* purchaser of the property without notice of the prior equity of plaintiff, and was not entitled to hold said property as such as against the equities of the plaintiff and his lien thereon for security of his debt of $4,100; that plaintiff was entitled to a decree for the specific performance of the contract of September 28, 1894, requiring defendants to execute to him a mortgage upon the property deeded to the defendant Joseph M. Lindley by the Rouses; that plaintiff was entitled to an equitable lien upon the property conveyed to Lindley by the Rouses, and that such lien was prior to the title of defendant Rachel M. Lindley, which she took by virtue of the conveyance of October 25, 1894; that plaintiff was entitled to have the release and satisfaction of the Rouse mortgage vacated and annulled, and to have the mortgage reinstated in full force for the benefit of plaintiff, and that such mortgage was entitled to be declared a lien paramount to every lien of the defendants, and that the plaintiff was entitled to have the mortgage foreclosed and the property sold, or so much thereof as might be necessary to discharge the debt of plaintiff against Joseph M. Lindley of $4,100 and interest and costs.

*Toole & Wallace*, for Appellants.

*Hartman Bros. & Stewart*, for Respondent.

HUNT, J.—Upon the trial of the case the respondent, Lewis, gave the following version of the circumstances under which he surrendered the $19,659 note:

"On September 28, 1894, Mr. Lindley stated to me that he had finally made a settlement, or rather a compromise, with

Rouse, and he went on to tell me what it was, and said, 'I think that is better than a lawsuit, don't you?' I said, 'I don't know.' He said that they were working on the deed, but, in order to get that deed,—to get a deed for the property,—he would have to get the Rouse note of me. I said, 'What am I to do?' I said, 'That is my security.' He said, 'Yes, I know it is; but if you will let me have the note, so I can get a deed to the property, I will then raise the money, and pay you off, or I will give you a mortgage to the property.' I said to him, 'I would rather have the money, and I don't like to give up my security.' Then he said it looked to him that, once he had the property in his own name, he ought to be able to raise that amount of money on it at a less rate of interest. I said, 'If you can get it at all, you certainly ought to get it for less interest;' and he then said, 'If I can't raise the money, I will then give you a mortgage on the property, and your security will be just as good then as it is now.' I said to him: 'If you will do that, I will get the note, and give it to you. The note is in the bank. I will be down in half an hour, and bring it to your office,'—which I did, relying upon his word that he would raise the money, and pay me, or give me a mortgage on the property. I went down town to his office, and he was not in, and I went out on the sidewalk, and handed the note to him on the sidewalk in front of his office, and then I went home. There was nothing said at all about my waiving any lien whatever. He said that he had compromised with Rouse, and had agreed to let him have some acreage property and one little cottage, and that he could not perfect that without this note. He would have to have the note to turn over to Rouse as consideration for this deed of this property from Rouse to himself. He stated that he had made the compromise, and allowed him to reserve certain parts of the property included in the $19,659 mortgage, to save the expense of foreclosure and sheriff's sale under the mortgage. We had no agreement that I was to relinquish any security I had on the property. The agreement was that, if I would surrender the note to him to get the deed from Mr.

Rouse, he would raise the money, and pay me, and, in case he failed to do so, he would then give me a mortgage, and that my security would continue and be just as good then as it was now. This mortgage was to be on the same property that was included in the $19,659 mortgage given by Mr. and Mrs. Rouse to J. M. Lindley. I had the $19,659 note in the bank, pinned to the $4,100 note, with some other papers, for safe-keeping. I had a box in the bank.''

The appellant Joseph M. Lindley gave substantially the following evidence upon the same matter:

''The contract and arrangement I made with Mr. Lewis when this $19,659 note was surrendered in substance was that I was to receive a deed from Mr. Rouse and wife, and surrender his note for $19,659, and that I was to make it satisfactory to him in some way. This was with Mr. Lewis. I don't know that there was any contract that I was to pay him, or give him a mortgage on this property which secured the $19,659 note. The arrangement was that I was to secure the note in some way or get the money. He wanted the money. * * * I had frequent conversations with the plaintiff about the matters in controversy. We had a good many conversations; among other things, that he had surrendered all the security he had, and that my wife should sign the note. That was the substance of the last conversation. I know he said, 'I have surrendered all the security I have, and I want your wife to sign this note.' That is the note he held against me. He repeatedly said that he had surrendered all the security he had on the note. The demand he made was that my wife sign the note.''

On cross-examination appellant testified:

''This demand that she sign the note with me was after I had deeded her the property; not before that. We had frequent conversations as to whether I would be able to pay the money, or have to give a mortgage. I don't remember of telling him on the 7th of November that I was afraid I would have to give that mortgage. Possibly I told him so. I don't know that I ever did. Still I guess it is so. He did not want

the mortgage. He would rather have his money. The original agreement was that he preferred the money to the mortgage. I have no distinct recollection of what was said at the time the note was surrendered. I was to give him a mortgage, or satisfy him in some way. I don't know that he asked that before he surrendered the note. Before he surrendered the note, I told him it would be necessary to have the note before I could get the deed, and that if he would do it I would either give him the money or give him a mortgage."

Now, when we scrutinize the facts as pleaded in the statement of the case given above, and the evidence of Lewis and Lindley, we find these essential facts:      ·

On September 28, 1894, the defendant and appellant Joseph M. Lindley owed this respondent, Lewis, $4,100, a balance due upon a debt which had been owing to Lewis since September, 1888; and from that last-mentioned date to September 28, 1894, the property involved in this controversy had been held by Lewis under a mortgage lien for the security of that debt. The debt was due, and the legal title to the property which had secured the debt was in persons by the name of Rouse, subject to Lewis' lien upon it. On September 28, 1894, there was a debt in favor of Mrs. Lindley against her husband for money loaned him ten and twelve years before. Prior to September 28, 1894, Mr. Lindley had made an agreement with the legal owners of the property which secured his debt to Lewis which was of advantage to him, but to perfect that contract it became necessary to put the evidence of Lewis' lien upon the realty into the possession of the Rouses, the holders of the legal title. In order to permit Lindley to take advantage of the benefit to accrue to him by the perfection of this transaction with the Rouses, the plaintiff surrendered to Lindley the evidence of his lien, upon the conditions that, in consideration of Lewis' surrendering to him (Lindley), for delivery and surrender to the Rouses, the $19,659 note, plaintiff's lien should be continued, and remain security to plaintiff for his said debt of $4,100, and, immediately upon the legal title being secured to said property in Lindley, he

would raise the money upon the security of the real estate, and pay the debt to Lewis; or, if he could not do that, he would execute to Lewis a mortgage on the realty as security for the note.

The testimony, therefore, satisfies us that the findings of the court in relation to the surrender, and the conditions attached thereto, of the $19,659 note are amply sustained by the evidence.. Indeed, a reference to the statements of appellant Lindley confirms the view taken by the district judge, for Lindley's statements are not substantially at material variance with the account given by Lewis. He admits that the evidence of the lien of Lewis was to be relinquished to him (Lindley), and in consideration therefor he was to try and raise the money to pay Lewis by a mortgage on the property, and that Lewis was to assist him in effecting such a loan, and that, if the money could not be raised, he was to secure the plaintiff's debt in some way satisfactory to him; but that the property should be secured in his (Lindley's) hands, so that he could carry out and make the loan upon it for the purpose of paying the $4,100 due to Lewis.

Furthermore, it is plain from the testimony that Lewis gave up the $19,659 note to Lindley, and Lindley gave it to the Rouses in order to perfect the title in himself of the property embraced in the mortgage, and which was security for the lien held by Lewis; and that it was by reason of the surrender of the $19,659 note that Lindley was enabled to and did procure the legal title to the property. But very soon after this was done, assuming that up to this time Lindley had been acting in good faith, and meant to be honest in his dealings towards Lewis, he conveyed all the property which had been so transferred to him by the Rouses, and all the other property which he owned, to his wife, to pay to her a stale claim, which was not alone invalid under the laws of Montana territory at the time it was contracted for, but the payment of which she never had demanded of him before, and which was not secured in any manner whatsoever, and besides was confessedly barred by the statute of limitations.

Under all of these conditions and circumstances we are led to inquire whether (1), there is an equity in Lewis' favor against Joseph M. Lindley which will be upheld against the Rouse property conveyed to Mrs. Lindley through Osborne; and (2), if there is, may it be enforced against the property as a prior lien to any interest conveyed to Mrs. Lindley by her husband through the Osborne transfer?

We think there is the equity, and it can be enforced. We believe it would be a fraud upon Lewis to deny him relief, and the rules of law and equity do not prevent a court from so finding.

The position of the appellant, as we understand it, is that no fiduciary relation existed between plaintiff and respondent, when respondent, Lewis, under the verbal arrangement, surrendered the $19,659 note to the appellant J. M. Lindley; that no fraud or deceit is charged or proved to have existed on Lindley's part in the procurement of the note from Lewis; hence, that no resulting or constructive trust could have arisen, or did arise, under which Lewis could enforce the verbal agreement, without doing violence to the statute of frauds. (Fifth Division Compiled Statutes of 1887, § 217). .

It must be remembered always that Lewis consented to the surrender of the evidence of his lien to enable Lindley to avail himself of the advantageous proposition made to him by the Rouses. He sought and obtained the confidence of Lewis to execute his plan. With faith in Lindley's honesty, and relying upon his promises to pay the debt due Lewis, or secure it by mortgage, Lewis surrendered the note, but without any intent to change his position as the holder of the first lien upon the property which had been embraced in the mortgage connected with the $19,659 note. Lindley therefore assumed and took upon himself a fiduciary relation towards Lewis, in consideration of the benefits which he might obtain for himself by consummating his negotiations with the Rouses.

There are two familiar principles which should govern a court of equity in exercising its remedial jurisdiction, both of which become applicable in this case. One is, when one,

through the influence of a relationship of a fiduciary nature, acquires title to property or obtains an advantage which he should not conscientiously retain, in order to prevent the abuse of the confidence, equity will grant relief. Another is that the statute of frauds will not be permitted to be used as an instrument of fraud.

Within one of the divisions of trusts are the resulting and constructive species. Pomeroy, in his Equity Jurisprudence (section 155), speaks of both kinds as properly described by the generic term "implied trusts," and thus defines them:

"Resulting trusts arise where the legal title is disposed of or acquired, not fraudulently, or in the violation of any fiduciary duty, but the intent in theory of equity appears or is inferred or assumed from the terms of the disposition, or from the accompanying facts and circumstances, that the beneficial interest is not to go with the legal title. In such a case a trust 'results' in favor of the person for whom the equitable interest is thus assumed to have been intended, and whom equity deems to be the real owner. Constructive trusts are raised by equity for the purpose of working out right and justice, where there was no intention of the party to create such a relation, and often directly contrary to the intention of the one holding the legal title. All instances of constructive trust may be referred to what equity denominates 'fraud,' either actual or constructive, including acts or omissions in violation of fiduciary obligations. If one party obtains the legal title to property, not only by fraud or by violation of confidence or of fiduciary relations, but in any other unconscientious manner, so that he cannot equitably retain the property, which really belongs to another, equity carries out its theory of a double ownership, equitable and legal, by impressing a constructive trust upon the property in favor of the one who is in good conscience entitled to it, and who is considered in equity as the beneficial owner."

Washburn on Real Property (volume 2, p. 520) says that, properly speaking, "constructive trusts are such as are raised by equity in respect to property which has been acquired by

fraud, or where, though acquired originally without fraud, it is against equity that it should be retained by him who holds the legal title.''

Spence, the learned English writer on Equitable Jurisdiction, on star page 511, expressly includes in his definition of constructive trusts those arising where property has been fairly and properly acquired, but it is contrary to some principle of equity that it should be retained by the party in whom it is vested,—at least for his own benefit; and to exemplify his text he cites the case of *Dyer* v. *Dyer*, 2 Cox, Ch. 93, where Lord Chief Baron Eyre stated that, where a purchase is made by a man or by his directions, and with his own money, the conveyance being in fact taken in the name of another, the trust of the legal estate has been said to ''result'' to the man who advances the money.    (See, also, Beach, Mod. Eq. Jur. § 226).

When these controlling rules are applied to the facts in the case at bar, and to the premises assumed by the learned counsel for the appellants, all those portions of his argument which proceed upon the hypothesis that Lindley did not acquire towards Lewis a relation of trust and confidence from the time of the agreement and the surrender of the note, fall, and with them go the citations to the cases which eliminate consideration of circumstances like those in this case; while, on the other hand, if we accept—as we do—the clearly established fact that there was a relationship of trust and confidence which Lindley violated, and that fraud is an element of the case, authorities are abundant in support of the view that Lindley held the legal title subject to Lewis' lien thereon.    (*Reagan* v. *Hadley*, 57 Ind. 509; *Nickerson* v. *Meacham*, 14 Fed. 881).

''It is an established rule of equity that, where trust and confidence are reposed by one party in another, and such other accepts the confidence or trust, equity will convert him into a trustee whenever it is necessary to protect the interest of the party so confiding and do justice between them.''    (*Foote* v. *Foote*, 58 Barb. 262).

Indeed, we do not understand the learned counsel to contend

that, if a constructive trust did arise, equity will deny respondent relief; that is to say, he does not dispute the general rule that the creation of constructive trusts is not affected by the statute of frauds, because there is no evidence of intention to create a trust, for "where there is no evidence of intention it could not be expected that a declaration of intention in writing, properly' signed, would be made or could be produced." (Perry, Trusts, § 124.)

Here, in our opinion, the effect of plaintiff's prayer is not to create a trust by parol in real property, under conditions not authorized by the statute, but to·have the defendant Lindley declared a trustee *ex maleficio*, because of his conduct, and, as such trustee, holding the title to the property obtained by the Rouse deed, and conveyed to Mrs. Lindley, subject to the lien of plaintiff, Lewis. (Beach, Mod. Eq. Jur. §§ 227, 233).

Lindley has violated his agreement. He cannot cling to the results, yet deny its legal efficacy. His position was that of a trustee with relation to the property deeded to him by the Rouses, and which he claimed to own when he deeded to his wife.

Finally, we pass upon the attitude of Mrs. Lindley. It has been decided by this court in *Bank* v. *Gagnon*, 19 Mont. 402, 48 Pac. 762, that the transferee of negotiable paper as.collateral for a pre-existing debt may be a *bona fide* holder under the rules of commercial law. The reason for the rule in such cases palpably lies in the interest of ordinary mercantile transactions; and, while authority is to be found generally in support of a like doctrine as applicable to the purchase of land, still, in such cases, whether an antecedent debt is a valuable consideration within the rule of a *bona fide* transaction, is not necessary to be considered in this case, and, until called upon to examine the many conflicting views, and to lay down a rule upon that point, we shall reserve our decision thereon.

But passing the contention that she paid a valuable consideration to her husband by giving him his notes, and assuming that she did, we still think that it was incumbent upon her to

establish her defense of a *bona fide* purchaser without notice of respondent's equity. "It is a universal rule that if a man purchases property of a trustee with notice of the trust, he shall be charged with the same trust in respect to the property as the trustee from whom he purchased." (Perry on Trusts, § 217).

Section 232, Fifth Division Compiled Statutes of 1887, pertaining to conveyances, provides:

"The provisions of this chapter shall not be construed in any manner to affect or impair the title of a purchaser for a valuable consideration, unless it shall appear that such purchaser had previous notice of the fraudulent intent of his immediate grantor or of the fraud rendering void the title of such grantor."

It is urged that, under the foregoing statute, the burden of proof to show such knowledge was upon the respondent plaintiff. We think otherwise.

The allegation of the complaint is that both Mr. and Mrs. Lindley had full knowledge of the $4,100 note held by Lewis, and of the lien held by him as security therefor at the time of the conveyance by Lindley to Osborne and by Osborne to Mrs. Lindley. As part of her affirmative defense, Mrs. Lindley alleged that she took the deed from her husband in absolute good faith, and for a valuable consideration, and without notice of any claim or equity in plaintiff. Inasmuch as Mrs. Lindley is the person seeking, as against Lewis, whom her husband sought to defraud, the protection of a *bona fide* purchaser for value, without notice, from such fraudulent grantor, it was incumbent upon her to show good faith and want of notice.

The question of burden of proof in cases like this was presented to the supreme court of Oregon in *Weber* v. *Rothchild*, 15 Or. 385, 15 Pac. 650, and it was decided that, the plaintiff having shown the fraudulent intent and purpose of the grantor in a deed, could stop, and that the grantee was then required to prove that he paid value in order to protect his title. There the defendant Rothchild—like the defendant Mrs. Lindley in

this ca-e—alleged facts in his answer tending to show that he was a *bona fide* purchaser for value, without notice, but no evidence was offered on those issues. It is to be observed here that Mrs. Lindley did not offer any evidence at all to sustain the averments of her answer that she did not know of the equity of this plaintiff, Lewis, or of the mortgage in existence which secured her husband's note to Lewis. The facts and the pleadings in the case at bar therefore are very similar to those stated in the opinion last cited, and bring the decision within the rule laid down by Judge Strahan that the plea of a *bona fide* purchase for value is an affirmative defense interposed by the defendant, and does not differ from other affirmative defense in respect to requiring the purchaser, who has · the affirmative of the issue, to offer evidence to support it. (*Boone* v. *Chiles*, 10 Pet. 211.) The Oregon court applied the rule that, when a fact is peculiarly within the knowledge of a party, he must furnish the necessary evidence of such fact. This, we believe, is correct, and, on principle, where the facts go to show that a husband has executed a deed of property to his wife for the purpose of defrauding a creditor of his judgment lien, the grantee named in such an instrument and who relies on the defense that she is a *bona fide* purchaser for a valuable consideration without notice, must protect her title by showing that she purchased for a valuable consideration, and in good faith, without notice of prior equities. It is remarkable that the exact contents of the notes given by Mr. to Mrs. Lindley were not testified to by them,—the only persons who knew anything of them. It is strange, too, that Mrs. Lindley refrained altogether from swearing on the trial that she did not in fact know of the plaintiff's equity, or of the $4,100 note, or of the history of the surrender of the $19,659 note to her husband, and that Lindley did not say that he had not informed her. Surely, she knew whether she had knowledge of these circumstances and facts, and it was certainly incumbent upon her to testify to them as part of her affirmative defense.

The learned judge of the district court must have consid-

ered all these matters in applying the law to the facts, for he assigns Mrs. Lindley's failure to offer any evidence of lack of knowledge as a reason for his findings made that she was not a purchaser without notice, and that she had full notice and knowledge of the debt of her husband to Lewis, and his lien on the property at the time of the transfer of the same to her. We find nothing in section 232, Fifth Division of the Compiled Statutes 1887, heretofore referred to, to justify the argument that the burden of proof was upon the respondent. We think that after he had offered his evidence leading to the inference that the deed from the appellant Lindley to his wife was made with intent to defraud Lewis, the onus of proof in respect to no notice rested upon Mrs. Lindley. (*Zimmer v. Miller*, 64 Md. 296, 1 Atl. 858; *Nickerson* v. *Meacham*, 14 Fed. 881; *Callan* v. *Statham*, 23 How. 477.)

Finally, upon the whole case, all the equities are manifestly with the respondent, and the judgment of the district court must be affirmed.

*Affirmed.*

BUCK, J., concurs. PEMBERTON, C. J., not sitting.