JENNIE W. HEATON v. GEORGE W. AINLEY.

**Contract on Back of Note.** An agreement written on the back of a note is a part thereof.

CONSTRUCTION Where a wife executed a note, stipulating that it was given to secure the payee against loss he might sustain by reason of any account, indorsement, or signing of any notes or other papers of the husband, and the husband was then indebted for a balance on account, the note secures such account, though, through inadvertence, the name of the husband is not, in terms, repeated in the writing.

**Sureties:** PRESUMPTIONS. Where it does not appear when a surety took up the note, it may be presumed that he did so at maturity.

APPLICATION OF PAYMENTS. Where a surety pays the note, but the maker, having no knowledge thereof, gives a new note to the surety, with the understanding that it is in lieu of the former, and is to be discounted at a bank, and the proceeds applied to the former, payments made by the maker of the second note should be applied on the first one.

SAME. Where a husband's creditor knowingly receives the proceeds of the sale of lots mortgaged by the wife to secure the debt, he must apply them on the mortgage.

SAME. A creditor receiving a payment without instructions may apply it on any claim he chooses.

**Judicial Notice.** The court takes judicial notice that "acct" stands for "account."

*Appeal from Dallas District Court.*—HON. JOHN A. STORY, Judge.

FRIDAY, APRIL 7, 1899.

ACTION for an accounting of money received on certain mortgages, and praying for their cancellation. The defendant Ainley asked for judgment for the amount due, and decree of foreclosure. The district court found a balance of six hundred and twenty-one dollars and forty cents owing Ainley, and entered a decree accordingly. Ainley appeals.—*Modified*, and *affirmed*.

*Read & Read* for appellant.

. *Shortley & Harpel* and *White & Clark* for appellees.

LADD, J.—On the tenth day of May, 1889, the plaintiff executed to the defendant Ainley a note of one thousand dollars, and a mortgage, securing its payment, on forty-two lots in Perry; and on the same day she and the defendant Heaton, her husband, executed a note for a like amount, and a mortgage, securing it, on fourteen lots belonging to him, which have since been conveyed to her. The last note was given to indemnify Ainley against any loss he might sustain by reason of indorsing or signing notes with. Heaton. That this was also the purpose of executing the first note is not questioned, but something more is claimed for it. When delivered, this was written on the back: "It is hereby agreed that this note is not transferable, and that it is given, together with the mortgage securing the same, only for the purpose of securing C. H. Ainley against any and all loss the said Ainley sustains by reason of any acct, indorsement or signing of any notes, bonds, or other papers." This was as much a part of the note as though incorporated in the body of it. *Elmore v. Higgins,* 20 Iowa, 250; *State v. Stratton,* 27 Iowa, 420; *Oskaloosa College v. Hickok,* 46 Iowa, 237. That the abbreviation "acct" stands for "account," admits of no doubt. It has been in common use in commercial transactions for so long that the memory of man runneth

not to the contrary, and its meaning is as well understood as though the word had been written out. It is given as an abbreviation in common use by the lexicographers, and the courts will certainly take notice of that which every one else knows. See authorities collected in 1 Enc. Pl. & Prac. 42, and 1 Am. & Eng. Enc. Law, 97. There was then a balance of several hundred dollars due Ainley on account, and, in view of this fact, the meaning of the writing is not doubtful. The loss contemplated was evidently (1) that which might be sustained by reason of existing account; and (2) that which might result to him as indorser or surety. The plain language employed answers the contention of the appellees that indemnity to Ainley as surety only was intended. That liabilities of Heaton were referred to fully appears from the evidence and surrounding circumstances, and is not questioned by the appellees. Doubtless, the words "of George Heaton" were inadvertently omitted from the writing, and we shall proceed as though they were annexed thereto.

II. Ainley was surety on two notes for one thousand six hundred dollars executed by Heaton to Joseph Ainley, and payable August 11, 1889. Whether these in fact belonged to Joseph, or this was the method taken by Ainley to obtain them for himself, we need not determine. That he represented Joseph, and furnished the money to take up other obligations, and Heaton so understood, are not disputed. In some way the notes were obtained, or taken up, but how or when is not disclosed. In the absence of any showing, we may well presume this to have been done at their maturity. Ainley paid a balance of one thousand and twenty dollars and sixty-five cents on the notes to Chandler, Brown & Co., September 30, 1889. This was unknown to Heaton, who executed another note to Ainley, with the understanding that it should be indorsed to the Commercial Bank, and funds obtained to liquidate them. Ainley simply indorsed this note, and left it with the bank for collection,

It requires no further attention, except as indicating the application which should be made of certain payments. Heaton paid the bank one hundred and forty-nine dollars and fifty cents on August 8, 1890; and on the nineteenth day of December, 1892, $290, derived from a certain mortgage given Ainley to secure this note, was left there to be applied thereon. As Ainley represented the note to have been given in lieu of those to Chandler, Brown & Co., and Heaton so believed, these payments should be applied on that debt. Ainley also received one thousand one hundred and ninety-seven dollars and fifty cents from the proceeds of a grain elevator sold by Heaton on the thirteenth day of February, 1893.

III.   Several of the lots owned by plaintiff, on which the first mortgage mentioned was executed to Ainley, were sold, and the money and securities derived therefrom turned over to him. He was fully advised that these came from the sale of such lots. It was her understanding that the proceeds of any lot sold should be applied in liquidation of this mortgage, and Heaton had no authority to use these for any other purpose. Without direction, then, Ainley was bound to apply them on her obligation. It is argued that the lots in fact belong to Heaton, and had been fraudulently transferred to his wife. She acquired the property long before the indebtedness was incurred, and without the purpose of defeating any of his creditors, present or future. It follows that the sums received from the sale of lots must be applied on the plaintiff's mortgage,—that is, two hundred dollars received from Rall October 30, 1894; two hundred dollars received from Mrs. Alpaugh February 15, 1895; two hundred and fifty dollars received from White June 1, 1895; and four hundred and eighty dollars received from Mann August 5, 1895. By so doing there appears to be a balance of two hundred and nine dollars and seventy-five cents June 1, 1895. At that time more than this amount was due from Heaton on account, after allowing all proper

credits; and, as the plaintiff's note and mortgage were given in part to secure this, we think Ainley entitled to judgment for this balance, with interest at the rate of six per cent. per annum from June 1, 1895, and a decree foreclosing the mortgage.

IV. But these payments have simply been applied to reduce the obligation of the plaintiff given to indemnify Ainley against loss on account or as surety of Heaton, and it remains to determine on what indebtedness of his they should be credited. The Mann notes for four hundred and eighty dollars were delivered to Ainley August 5, 1889, and by him credited on his general account with Heaton. The appellees say that these should be so applied as to reduce the plaintiff's obligation. This is true, as we have seen, but that does not aid in determining on what debt of Heaton the credit should be entered. Ainley says he and Heaton agreed it should be on the account, while the latter denies this, but does not claim that any instructions were given. In the absence of any direction, Ainley had the right to place the credit on any indebtedness he might choose. The proceeds of the other lots are to be applied on sums heretofore mentioned as having been paid out by Ainley. After allowing Heaton all proper credits, and Ainley interest at the rate of six per cent. per annum on moneys paid out, there was due on the latter on June 1, 1895, the sum of one thousand and ninety-three dollars and sixty-one cents. Judgment will be rendered for this amount, with interest at the rate of six per cent. per annum from that date, and decree entered foreclosing the mortgage executed on the fourteen lots of Heaton. One-half of the costs of this court will be taxed to each party—Modified and AFFIRMED.