KOOPMAN ET AL., RESPONDENTS, *v.* MANSOLF ET AL., APPELLANTS.

(No. 3,514.)

(Submitted May 4, 1915. Decided May 28, 1915.)

[149 Pac. 491.]

*Fraudulent Conveyances—Husband and Wife—Consideration— Burden of Proof—Appeal and Error—Equity Cases—Record—Presentation of Evidence—Supreme Court Rules.*

Appeal and Error—Record—Equity Cases—Presentation of Evidence—Supreme Court Rules.

1. If upon the evidence in an equity case, though embodied in the record in narrative form, contrary to Supreme Court Rule VII, subdivision 3, which requires it to be presented by question and answer, the rights of the parties may properly be determined, and the omission to observe the rule does not add substantially to the labor of examination, nonobservance of the rule will not necessarily result in dismissal of the appeal.

Fraudulent Conveyances—Husband and Wife—Consideration—Burden of Proof.

2. Where a husband conveyed property to his wife through an intermediary, the former being then insolvent to the wife's knowledge, the burden of showing that the conveyance was made for an adequate consideration and without any intention to defraud the creditors of her husband was on the wife.

[As to conveyance from husband to wife as fraudulent, see notes in 19 Am. St. Rep. 657; 20 Am. St. Rep. 715; 90 Am. St. Rep. 499. As to burden of proof as to fraud against creditors in transfer from husband to wife, see notes in 56 L. R. A. 823.]

Same.

3. Inasmuch as the intimate relations between husband and wife afford unusual facilities for the practice and concealment of fraud, dealings between them will be closely scrutinized by courts when called in question.

Same—Evidence—Sufficiency,

4.  In an action to set aside a conveyance from husband to wife as in fraud of creditors, evidence *held* sufficient to justify a finding that the conveyance was without consideration.

Same—Conveyance to Married Woman by Stranger—Burden of Proof.

5.  Transactions between a married woman and a stranger touching property are not subject to the same scrutiny as those had between her and her husband, but stand upon the same footing as if she were single; hence one who attacked a conveyance of property to a married woman by a stranger on the ground that the consideration had been paid by her husband, had the burden of showing such fact, a mere suspicion that it was fraudulent being insufficient to overturn it.

[As to burden of proof of fraud, see note in 11 Am. St. Rep. 758.]

Same—Action to set Aside—Prerequisite.

6  A creditor cannot invoke the aid of equity to reach his debtor's assets which have been fraudulently conveyed, without having acquired a lien thereon by appropriate proceedings at law, or unless a trust exists therein in his favor.

[As to conditions precedent to equitable remedies of creditors, see note in 23 L. R. A. (n. s.) 1. As to creditor's suits, see note in 66 Am. St. Rep. 271.]

*Appeal from District Court, Missoula County; A. L. Duncan, Judge.*

Action by Fritz Koopman and Fred Wissbrod, copartners as Koopman & Wissbrod, against Joseph A. Mansolf and another. From a judgment for plaintiffs, defendants appeal. Reversed and remanded.

Cause submitted on briefs of counsel.

*Mr. Harry H. Parsons* and *Mr. Thos. N. Marlowe,* for Appellants.

*Mr. Chas. Hills, Mr. A. B. Hoblitt* and *Mr. Gil J. Heyfron,* for Respondents.

Appellants' brief contains no discussion or proposition of law, or citation of authority, pointing out in what essential particular the evidence is entirely lacking or insufficient. Their own admissions upon the trial before motion for nonsuit established a *prima facie* case of fraud against them, and cast upon defendant Antoine Mansolf the burden of proving Joseph A. Mansolf's good faith, or that she paid a valuable consideration for the property. (*Lewis* v. *Lindley,* 19 Mont. 422, 48 Pac. 765;

*Malcolm Brewing Co.* v. *Wagner* (N. J. Ch.), 45 Atl. 260; *First National Bank* v. *McClellan,* 9 N. M. 636, 58 Pac. 347; *Wigginton* v. *Minter,* 28 Ky. Law Rep. 79, 88 S. W. 1082; *Noble* v. *Gilliam,* 136 Ala. 618, 33 South. 861; *Southern Lumber & Supply Co.* v. *Verdier,* 51 Fla. 570, 40 South. 676; *Gable* v. *Columbus Cigar Co.,* 140 Ind. 563, 38 N. E. 474; *Stockslager* v. *Mechanics' Loan & Savings Inst.,* 87 Md. 232, 39 Atl. 742; *Adoue* v. *Spencer,* 62 N. J. Eq. 782, 90 Am. St. Rep. 484, 56 L. R. A. 817, 49 Atl. 10; *Walker* v. *Harold,* 44 Or. 205, 74 Pac. 705; *Rankin* v. *Goodwin,* 103 Va. 81, 48 S. E. 521; *Bales* v. *Drake,* 28 Wash. 447, 68 Pac. 961; *Strickland* v. *Jones,* 131 Ga. 409, 62 S. E. 322; *Canedy* v. *Skinner,* 50 Wash. 501, 97 Pac. 497.)

On a bill by an existing creditor to subject real estate conveyed by a third person to the wife of the insolvent debtor, the burden of proving that the consideration was afforded alone by the wife out of her separate estate rests on her, when her husband's insolvency and the existence of the indebtedness are shown or admitted, since the relationship between husband and wife operates to raise the presumption that the consideration for the conveyance moved from him. (*Silvey & Co.* v. *Vernon,* 153 Ala. 570, 127 Am. St. Rep. 69, 45 South. 68; *Watts* v. *Burgess,* 131 Ala. 333, 30 South. 868; *Kahn* v. *Weinlander,* 39 Fla. 210, 22 South. 653; *Sikking* v. *Fromm,* 112 Ky. 773, 23 Ky. Law Rep. 2138, 66 S. W. 760; *Spence* v. *Repass,* 94 Va. 716, 27 S. E. 583; *Runkle* v. *Runkle,* 98 Va. 663, 37 S. E. 279; *Miller* v. *Gillispie,* 54 W. Va. 450, 46 S. E. 451.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Action by the plaintiffs to have set aside conveyances of land situated in Missoula county, alleged to have been fraudulently made by the defendant Joseph A. Mansolf to Antoine Mansolf, his wife, to defeat satisfaction of a claim due by judgment from Joseph A. Mansolf to the plaintiffs. On February 16, 1910, the plaintiffs, as copartners, brought an action in the district court of Missoula county against the defendant Joseph A. Mansolf to

recover the sum of $419.19, a balance alleged to be due for goods, wares and merchandise sold by plaintiffs to him between December 2, 1908, and December 29, 1909. Such proceedings were had in the action that on December 22, 1911, a judgment was rendered, entered and duly docketed in favor of plaintiffs and against Joseph A. Mansolf for $494, the amount claimed, together with interest and costs. Execution was immediately issued thereon, but on January 4, 1912, was returned ''wholly unserved and unsatisfied.'' At the time his indebtedness was incurred to the plaintiffs by Joseph A. Mansolf, he was the owner of three lots in the Glenwood Park Addition to the city of Missoula, described as lots 33, 34, and 35 in block 5. On February 10, 1910, he and his wife conveyed these lots to one James M. Rhoades, who immediately joined with his wife in a conveyance of them to Antoine Mansolf. The consideration named in each conveyance was $1. On January 27, 1910, W. M. Bickford, being the owner of seven lots in South Missoula, described as lots 12–18, inclusive, in block 38, joined with his wife in a conveyance of them to Antoine Mansolf for a consideration of $550. It is alleged that, when the conveyances mentioned were made, Joseph A. Mansolf was wholly insolvent; that the conveyance to Rhoades, and that by Rhoades and wife to Antoine Mansolf, were voluntary and without any consideration whatever; that they were made for the purpose of vesting title to the property conveyed in Antoine Mansolf, with the fraudulent intent in Joseph A. Mansolf to hinder and delay the plaintiffs in enforcing the payment of their claim; that the entire consideration paid for the lots conveyed by Bickford and wife was paid by Joseph A. Mansolf; that the conveyance was procured by him to be made to his wife for the same purpose for which the other conveyances were made; and that in both instances Antoine Mansolf accepted the title so conveyed to her, with full knowledge of her husband's insolvency and fraudulent intent, with the like intent on her part to aid him in accomplishing his purpose. The prayer demands that the several conveyances be declared fraudulent and void as to the plaintiffs, and that the

property be subjected to sale for the purpose of satisfying their claim. By joint answer the defendants deny generally all the allegations of the complaint. Under the direction of the court, the jury made and returned special findings upon the material issues, all of which were in favor of plaintiffs. Thereafter, upon motion of plaintiffs' counsel, the court made formal findings, adopting in substance those made by the jury, and rendered its decree granting the relief demanded. The defendants have appealed from the decree.

The one contention made on behalf of defendants is that the evidence is insufficient to support the conclusion that Joseph A. Mansolf made or procured either or both of the conveyances to his wife as alleged, for the purpose of defrauding the plaintiffs.

At the outset we are confronted with an objection by counsel for plaintiffs to a consideration of this case on the merits, for the [1] reason that the defendants, in the preparation of their bill of exceptions, failed to incorporate therein the evidence as delivered by the witnesses, in question and answer, as required by the rules of this court (44 Mont. xxx, Rule vii, subd. 3, 129 Pac. xi). From a technical point of view, the defendants are not entitled to have this court determine the question submitted and for the reason stated. (*Gilmore* v. *Ostronich,* 48 Mont. 305, 137 Pac. 378.) The purpose of the rule is to require appellants, in equity cases and proceedings of an equitable nature, to present to this court the evidence involving controverted questions of fact, in the exact words of the witnesses, to the end that the duty imposed upon the court by section 6253 of the Revised Codes may be properly discharged. Speaking generally, observance of the rule is imperative, for, as has been frequently pointed out, the statute requires this court, in the review of questions of fact in this class of cases, to assume, as nearly as may be, the position of the trial court and to make its examination accordingly. The extent of the review is necessarily limited by the fact that an important item of testimony, *viz.,* the appearance and demeanor of the witnesses, cannot be embodied

in the record. Hence due allowance must always be made for the difference between the probative value of the testimony as delivered by the living witness and the testimony of the witness as it is presented in the printed record. (*Bordeaux* v. *Bordeaux*, 32 Mont. 159, 80 Pac. 6; *Finlen* v. *Heinze*, 32 Mont. 354, 80 Pac. 918.) The rule, however, does not in terms declare, nor was it intended to mean, that a failure to meet its requirements shall in every case be deemed a conclusive reason why an appeal shall not be considered, so far as its merits are sufficiently apparent. It was enacted to serve the convenience of this court as well as the interests of litigants, and the penalty of dismissal (Rule vii, subd. 6), or refusal to consider the appeal on the merits will not be enforced, if upon the evidence, though embodied in the record in narrative form, the rights of the parties may properly be determined, and the omission to observe the rule does not add substantially to the labor of examination. (*Gilmore* v. *Ostronich, supra.*) If, for example, in a given case, the only contention a defendant desires to make is that no evidence was introduced by the plaintiff to establish a material issue presented by the pleadings, it would be a manifest injustice to him if this court should refuse to examine the evidence to ascertain the merits of his contention, because, though the record is properly certified as correct and as embodying all the evidence, he failed to observe the rule. We shall not give such a construction to the rule as would make this result possible. In this case we do not think that the omission by the defendants to observe the rule renders it necessary to deny them a consideration of the case upon the merits.

The evidence adduced by the plaintiffs discloses these facts: [2] The purpose of the conveyance of the lots in the Glenwood Park addition to Antoine Mansolf was to vest her with title; Rhoades acting gratuitously as interagent to accept the title from the husband and pass it to the wife. Joseph A. Mansolf was insolvent at the time, and had been for more than two years. This fact was known to the wife. The reasonable value of the lots was $50 each, or all together $150. This evidence was suffi-

cient to raise a presumption of fraud and to shift to the wife the burden of showing that the transaction was based upon an adequate consideration, and that she took the conveyance in good faith without any intention to defraud the creditors of her husband. (*Lewis* v. *Lindley,* 19 Mont. 422, 48 Pac. 765.) Under the statute (Rev. Codes, sec. 3736), a married woman may contract to the same extent and with the same effect as a single woman. This clothes her with liberty to contract with her husband as well as any other person; but the intimate relations existing between husband and wife afford such facilities for the practice and concealment of fraud that their dealings with each other will in every case be closely scrutinized. (*Lambrecht* v. *Patten,* 15 Mont. 260, 38 Pac. 1063.) And, when the evidence discloses a situation such as shown in this case, a grant from the husband to the wife will be overturned, unless she can show that it was wholly consistent with fair dealing. (*Lewis* v. *Lindley, supra.*) Antoine Mansolf did not offer herself as a witness. Joseph A. Mansolf testified, in effect, that his wife paid, at his request, to the firm of John R. Daily & Co., with whom he had been dealing, a bill due from him, amounting to $177.49, and that the conveyance was made to her for this consideration. A receipt from John R. Daily & Co., introduced as an exhibit to his testimony, tended to show that the payment was made by way of a deduction of the amount of the bill from the price of two lots sold by her to John R. Daily at some previous time not named. In his testimony, however, Joseph A. Mansolf stated that his wife had paid the bill with money received from her father's estate. This was the only evidence offered to sustain the conveyance. Taking into consideration the silence of the wife and the equivocal character of Joseph A. Mansolf's testimony, we think the findings relating to this conveyance were justified. Evidently both the jury and judge concluded, as they had a discretionary power to do, that the witness was not worthy of credit, and rejected his testimony entirely.

The validity of the conveyance from Bickford and wife is to be determined by a different rule. Upon its face it was made [5] to Antoine Mansolf by strangers, *prima facie* for the consideration named and paid by her. The wife being competent to contract, obviously transactions between her and strangers stand upon the same footing as if she were single, and are not subject to the same scrutiny as those had with her husband. Any other view would impose a limitation upon the right conferred by the statute, *supra*, whereas the statute itself contains no limitation or proviso. The burden was therefore upon the plaintiffs to show, by a preponderance of the evidence, that the consideration for this conveyance was paid by the husband. Antoine Mansolf was not required to produce any evidence until a *prima facie* case had been made establishing this fact. The evidence introduced by the plaintiffs to show any connection of Joseph A. Mansolf with the transaction resulting in the conveyance was exceedingly vague and unsubstantial. Apparently the purchase was made through a real estate broker under a contract by the terms of which the purchase price was paid in monthly installments of $25 each. Whether the contract was in the name of the wife does not appear. Some of the installments were probably paid to the broker by the husband. The basis for the statement is that the books of the broker show an account under the name of Joseph A. Mansolf of the payment of some of the installments (ten in number) made during 1908 and 1909, but, as to who actually made them, the broker had no recollection. Indeed, he stated that the books had been kept by a clerk employed by him and that the payments were probably made to the clerk. There was no evidence that the books correctly represented the course of business in his office. How or when or by whom the other installments were paid is not shown. The only other evidence on the subject is the statement by Joseph A. Mansolf that some of the installment payments to the broker were made by him for his wife with money given to him by her for that purpose. How many were so made does not appear.

Fraud cannot be presumed. As any other fact, it must be established by competent evidence. One who attacks the validity of a conveyance must assume, *in limine,* the burden of proof, even though it arose out of dealings between husband and wife. A mere suspicion that it is fraudulent is not sufficient to overturn it. (*Wilson* v. *Harris,* 21 Mont. 374, 54 Pac. 46.) If the testimony of Joseph A. Mansolf be rejected entirely, as counsel insist it should be, because it is too equivocal and self-contradictory to be entitled to credit, the impeachment of Antoine Mansolf's title under the Bickford deed rests exclusively upon the vague and unreliable showing made by the books of the broker.. If his testimony be accepted as credible so far as it contains an admission that he paid some of the installments, the admission must be accepted with the qualification attached, *viz.,* that the installments paid by him were paid for the wife and out of money furnished by her. At most, the evidence goes no further than to furnish a basis for the suspicion that Joseph A. Mansolf was in fact the purchaser from Bickford and had the conveyance made to his wife in order to defraud his creditors.

If the foregoing discussion disposed of all of the questions arising upon the record, we would follow the course heretofore pursued in similar cases, and remand this case, with directions to the district court to permit the plaintiffs to introduce further evidence touching the Bickford conveyance, and then make findings and enter a decree granting all the relief demanded, or, in case they should not be able to do this, to so modify the findings and decree as to eliminate this conveyance entirely. Another question is presented, however, which, though it is not referred to in the briefs of counsel, is so fundamental in character that we think it requires notice. It has been repeatedly held by this court that a creditor cannot invoke the aid of a [6] court of equity to reach assets of his debtor which have been fraudulently conveyed, without having acquired a lien upon them by appropriate proceedings at law, or unless a trust exists therein in his favor; and that, in case of personal property and interests not capable of manual delivery, a lien must

be fixed upon them by levy of process in the manner pointed out by the statute. (*Wilson* v. *Harris, supra; Wyman* v. *Jensen,* 26 Mont. 227, 67 Pac. 114; *Raymond* v. *Blancgrass,* 36 Mont. 449, 15 L. R. A. (n. s.) 976, 93 Pac. 648.) In *McMillan* v. *Davenport,* 44 Mont. 23, Ann. Cas. 1912D, 984, 118 Pac. 756, it was held that a judgment, though docketed, is not a lien upon a secret interest of the judgment debtor in real estate appearing on the record in the name of another, whether the debtor is a *cestui que trust* or a fraudulent grantor. In many, if not most, of the states, recovery of judgment and return of an execution *nulla bona* is sufficient to enable the creditor to invoke the aid of equity to reach property fraudulently conveyed by his debtor. In view of the foregoing decisions, however, and the further fact that all interests of the judgment debtor in real estate, whether recorded in his name or not, are subject to attachment and execution (Rev. Codes, secs. 6662, 6821), the question arises whether or not, in this state, in order for a creditor to obtain relief in this clase of cases, he must not allege and prove that he has secured a lien by causing attachment or execution to be levied. If this is so, the complaint in this case does not state a cause of action. Nor does the evidence make a case entitling plaintiffs to any relief, because it only shows that plaintiffs are judgment creditors. The question has never been definitely decided by this court. Inasmuch as this is so, and inasmuch as it was not decided by the trial court and is not discussed in the briefs of counsel, we shall not undertake to decide it, but submit it for consideration by court and counsel when the case again reaches the trial court.

The judgment is therefore reversed, and the cause remanded for such further proceedings as court and counsel may deem proper.

*Reversed and remanded.*

MR. JUSTICE SANNER and MR. JUSTICE HOLLOWAY concur.