NEWMAN, APPELLANT, *v.* NORTHERN MONTANA ASSOCIATION OF CREDIT MEN, RESPONDENT.

(No. 4,795.)

(Submitted May 25, 1922.  Decided June 19, 1922.)

[208 Pac. 914.]

*Real Property—Title—Removing Cloud—Attachment—Cancellation of Instruments—Fraudulent Conveyances—Equity—Jurisdiction—Appeal—Theory of Case.*

Real Property—Title—Removing Cloud—Attachment—Fraudulent Conveyances—Evidence—Sufficiency.
1. In an action to remove a cloud from the title to real property cast by the levy of a writ of attachment, *held* that the evidence justified the conclusion that the improvements placed thereon were erected with money furnished by the father of the owner of the lot with the fraudulent intent to place his assets beyond the reach of his creditors at whose instance the attachment was issued, and that plaintiff did not sustain the burden of proof.

Same—Attachment—Appeal—Theory of Case.
2. Where a cause was, with the acquiescence of appellant, tried upon the theory that buildings had been properly attached as real property, he is bound thereby on appeal and will not be heard to assert that the improvements should have been attached in the manner provided for the attachment of personal property.

Same—Attachment—Irregular Levy—Who may not Complain.
3. Where land and the buildings thereon are owned by different persons, the owner of the land cannot complain of an attachment and levy on the buildings on the ground that it was improperly issued.

63 Mont.—35

Same—Removing Cloud—Cancellation of Instruments—Complaint.
    4.  Where plaintiff in his action to remove a cloud from the title to property had based his cause of action upon the levy of a writ of attachment, his contention on appeal that the writ was improperly levied and therefore constituted no lien upon the property deprives him of the relief asked for, since if it constituted no lien it cast no cloud which needed removal.

Fraudulent Conveyances—Equity—Jurisdiction.
    5.  Recovery of judgment and return of execution *nulla bona* is sufficient to enable the creditor to invoke the aid of equity to reach property fraudulently conveyed by his debtor.

*Appeal from District Court, Cascade County; H. H. Ewing, Judge.*

ACTION by Sam Newman against the Northern Montana Association of Credit Men. Judgment for defendant and plaintiff appeals. Affirmed.

*Messrs. O'Leary & Doyle,* for Appellant, submitted a brief; *Mr. W. F. O'Leary* argued the cause orally.

The court in its conclusions of law from the facts found has in effect said, that where one has made a voluntary conveyance of property out of proportion to his assets and which caused his insolvency years afterward, the voluntary conveyance is void as to any creditor of the donor without regard to whether the creditor existed at the time of the conveyance or became a creditor after the conveyance, and also without regard to the financial condition of the donor at the time of the conveyance or the innocent or fraudulent intention of the donor at the time of, and in regard to, the making the conveyance.

We contend that that is not the law of fraudulent conveyances, but in order to constitute a voluntary conveyance fraudulent as to existing creditors there must have been creditors then existing who have been deprived by such conveyance of the right to satisfy their claims out of the property of the donor or an actual fraudulent intent to defraud creditors must be shown on the part of the donor at the time of the conveyance. (20 Cyc. 456; *Voorhis* v. *Michaelis,* 45

Kan. 255, 25 Pac. 592; *Krueger* v. *Vorhauer,* 164 Mo. 156, 63 S. W. 1098; sec. 6129, Rev. Codes.) Or if there be no creditors existing at the time of such voluntary conveyance then there must be shown an actual fraudulent intent on the part of the donor to defraud subsequent creditors. (20 Cyc. 423; *Krueger* v. *Vorhauer,* 164 Mo. 156, 63 S. W. 1098; *Elyton Land Co.* v. *Iron City S. B. Wks.,* 109 Ala. 602, 20 South. 51; *Heaton* v. *Ainley,* 108 Iowa, 112, 78 N. W. 798.)

Where ownership of land is in one person and the thing affixed to it in another and in its nature it is capable of severance without injury to the former, the latter cannot in contemplation of law become part of former, but must necessarily remain distinct property to be used and dealt with as personal estate only. (*Nigro* v. *Hatch,* 2 Ariz. 144, 11 Pac. 177; *Ingalls* v. *St. Paul, M. & M. Ry. Co.,* 39 Minn. 479, 12 Am. St. Rep. 676, 40 N. W. 524.) "Where buildings are placed on one person's realty by another with an agreement for removal the buildings remain personalty." (*Leonard* v. *Clough,* 133 N. Y. 292, 16 L. R. A. 305, 31 N. E. 93; *Waters* v. *Reuber,* 16 Neb. 99, 49 Am. Rep. 710, 19 N. W. 687; *Watterson* v. *Cruse,* 179 Cal. 379, 176 Pac. 870.)

"Property of a debtor alleged to have been transferred in fraud of creditors cannot be subjected to a judgment against him unless it is shown that the debt existed prior to the transfer, or that the transfer was made with the intention of defrauding subsequent creditors." (*Arnett* v. *Coffey,* 1 Colo. App. 34, 27 Pac. 614; 20 Cyc. 460; *Dodd* v. *McCrow,* 8 Ark. 83, 46 Am. Dec. 301; *Windhaus* v. *Bootz,* 92 Cal. 617, 28 Pac. 537; *Harting* v. *Jockers,* 136 Ill. 627, 29 Am. St. Rep. 341, 27 N. E. 188; *Cole* v. *Brown,* 114 Mich. 396, 68 Am. St. Rep. 491, 72 N. W. 247; *Crawford* v. *Beard,* 12 Or. 447, 8 Pac. 537.)

The general rule is that a conveyance cannot be attacked on the ground of fraud by creditors whose claims were acquired after due notice, either actual or constructive, of such conveyance. (20 Cyc. 427; *State Bank of Chase* v. *Chatten,*

69 Kan. 435, 77 Pac. 96; *Eigleberger* v. *Kibler,* 1 Hill Eq.
(S. C.) 113, 26 Am. Dec. 192; *Rauh* v. *Morris,* 40 Okl. 288,
137 Pac. 1174.)

*Messrs. Freeman, Thelen & Frary,* and *Mr. T. F. McCue,*
for Respondent, submitted a brief; *Mr. McCue* and *Mr. G. S.
Frary* argued the cause orally.

If a debtor expends money in the improvement of real
estate of another party without consideration, or with an
intent to defraud creditors, and the owner of the property
has knowledge of the same, or if there is a voluntary con-
veyance by one, not indebted at the time, with the intent
to deceive subsequent creditors, then such conveyances are
void. (20 Cyc. 397; *Blair* v. *Smith,* 114 Ind. 114, 5 Am. St.
Rep. 593, 15 N. E. 817; *Gilleland* v. *Jones,* 144 Ind. 662, 55
Am. St. Rep. 210, 43 N. E. 939; *Bush & Mallett Co.* v.
*Helbing,* 134 Cal. 676, 66 Pac. 967.) ''Where a conveyance
is voluntary an actual intent to defraud is not necessary to
render it fraudulent as to existing creditors." (*Wooten* v.
*Steele,* 109 Ala. 563, 55 Am. St. Rep. 947, 19 South. 972;
*Alabama Life Ins. etc. Co.* v. *Pettway,* 24 Ala. 544.)

Where title to property is taken in one who does not
furnish the funds for its purchase, unless the transaction is
intended and shown to be a gift, the person who takes title
is a mere trustee holding the naked legal title for the benefit
of the person who furnished the funds to acquire it. (*Eisen-
berg* v. *Goldsmith,* 42 Mont. 563, 113 Pac. 1127.)

Under the circumstances of this case, appellant was estopped
as against the claim of the creditors from asserting that
he is the owner of the property. The rule that should apply
to this case is well put by Lord Denman, in *Pickard* v. *Sears,*
[1837] 6 Ad. & E. 469, 112 Eng. Reprint, 179, 11 Eng. Rul.
Cas. 78, when he said: "We have held that whatever the
motive may be if one so acts or speaks that the natural
consequence of his words and conduct will be to influence

another to change his condition, he is legally chargeable with an intent, a willful design, to induce the other to believe him, and to act upon that belief." (*In re First Trust & Sav. Bank of Billings,* 45 Mont. 89, Ann. Cas. 1913C, 1327, 122 Pac. 561.)

MR. COMMISSIONER COMER prepared the opinion for the court.

This is an appeal by plaintiff from a judgment rendered against him in the district court, and involves a lot and the improvements thereon in Great Falls.

In 1909 plaintiff purchased the lot from a town site company for the sum of $456; in 1910 a two-story brick building of the value of $18,000 and a one-story brick warehouse of the value of $2,000 were constructed upon the lot. Plaintiff at the trial testified he got some money from his father, J. S. Newman, to construct the building, just how much he does not remember, but it appears from the record that his father furnished all of the money necessary except about $4,700. Plaintiff was then sixteen years of age, and he claims to have received some money from some cattle and horses which he claims to have owned, but his recollection was not very clear, either as to the number he owned or how the expenses of their maintenance were paid. The checks for payment of the building erected were made out by J. S. Newman, who moved into the building shortly after it was completed, opened a store in it, and continued to operate the business until about 1916. In 1915 witness Wallace, in charge of the R. G. Dun Financial Reporting Agency in Great Falls, called upon Sam Newman, the plaintiff herein, and submitted to him a financial statement made out by J. S. Newman, showing, among other things, assets as follows: "One brick block, 2 stories, Gt. Falls, $25,000"—and he (Sam Newman) claimed that the property belonged to his father. The excavating for the brick building was paid for by J. S. Newman, partly in groceries from his store and partly in cash, and

the business relations were had with him. In 1912 or 1914, J. S. Newman told one of his creditors from whom he was purchasing goods that he wanted to sell the property, but could not do so until his son became of age, and that then he would have it transferred to him. J. S. Newman made various representations to his creditors between 1910 and 1915 that he owned the brick building. He had running accounts with several of them during this period of time, and in October, 1916, he owed them various sums as balances due. His creditors assigned their claims to the defendant herein, Northern Montana Association of Credit Men, and on October 24, 1916, it commenced an action against him upon said accounts, procured the issuance and levy of a writ of attachment upon said lot, and on November 28, 1916, judgment was entered in favor of said Association of Credit Men and against the said J. S. Newman for the sum of $3,368.08. In April, 1918, plaintiff herein, Sam Newman, commenced this action against the Association of Credit Men, alleging he was the owner of the lot, setting up the levy of the writ of attachment, claiming that it constituted a cloud upon the property, and asking for its cancellation. Defendant herein answered, setting up the assignment of the creditors' claims to it, and that in 1910 a conspiracy existed between Sam and J. S. Newman and wife to cheat and defraud the then existing and the future, subsequent, and continuing creditors of J. S. Newman by placing the property of the said J. S. Newman so his creditors would be unable to reach it.

Other facts set out in the answer are substantially as set forth herein.

Defendant herein denies the ownership of the plaintiff in the lot, and alleges that it has no adequate remedy at law by which it can obtain the interest of J. S. Newman in the lot to satisfy its judgment, and asks that Sam Newman hold the title of the lot and buildings in trust for the use and benefit of J. S. Newman, and that the court decree a con-

veyance of said lot and buildings, or so much thereof as may be necessary to satisfy said judgment.

Finding of fact No. 7 of the district court is as follows: "That, while the said J. S. Newman was carrying on said business, as aforesaid, he withdrew money, from time to time, out of the business, and with the knowledge and consent of his son, Sam Newman, the plaintiff herein, and, without any consideration, constructed, or caused to be constructed, on said lot 7, block 485, in the town site of Great Falls, Cascade county, Montana, being the same lot as was attached, as herebefore stated, a two-story brick building, at a cost of about $18,000, and a warehouse at a cost of about $2,000. That the amounts so expended by the said J. S. Newman were disproportionate to the amount of capital he had invested in his business, and caused his said insolvency."

As a conclusion of law the court found that plaintiff is not the owner of any of the improvements on said lot 7; that the writ of attachment is a valid lien upon said improvements and the rents and profits therefrom. Judgment was entered accordingly, and plaintiff appeals.

The evidence in this case shows that J. S. Newman fur- [1] nished the greater portion of the money for the buildings on the lot. In bankruptcy proceedings he testified his wife furnished it, and in the district court his testimony indicates he furnished all except about $4,700. He claimed on various occasions to his creditors that he owned the premises, and the evidence also shows that the son, Sam Newman, admitted the ownership was in the father. Upon these assertions considerable credit was extended to J. S. Newman in his business by the defendant's assignors.

There is a conflict between the testimony of the father and the son; the father says he gave the money to the son with which to build the buildings, while the son says that he borrowed it. In this case it is incumbent upon the plaintiff, Sam Newman, to show he is the owner of the property in ques-

tion, and unless he does so he is not entitled to the relief sought.

From a careful examination of the evidence in this case, we do not believe the conclusion is warranted that plaintiff owned the improvements at any time, or that it was the intention of the parties that the son should become the owner of the improvements. The statements made by J. S. Newman clearly indicate he owned the improvements, and the admissions of the son show he acquiesced in the assertion of the father, and that at the time he did not consider himself the owner. We are of the opinion that the conclusion of the district court was correct in that plaintiff has not shown he is the owner of the improvements upon the lot by the necessary proof.

Plaintiff in his brief admits that the money expended by the father in the construction of the building was without consideration, and constituted a voluntary conveyance of his property, but contends that the accounts assigned to the defendant Association of Credit Men were not in existence at the time of the conveyance, and that the law of fraudulent conveyance is not the same as to creditors existing at the time of the conveyance as it is to those who become such subsequent to the conveyance; that a voluntary conveyance is void as to pre-existing creditors where the grantor did not retain a sufficient amount of property to satisfy his creditors, but that, as to subsequent creditors, the conveyance is not void unless it is shown the conveyance was made with the fraudulent intent had at the time to place the property conveyed beyond the reach of subsequent creditors, and that, in the absence of such an intent, a voluntary conveyance as to subsequent creditors is not void; that defendant's assignors in this case were all subsequent creditors, and therefore, in order to make the conveyance void as to them, it must first be shown that it (the conveyance) was made with the intent to defraud subsequent creditors, citing among other authorities: 20 Cyc. 423; *Mayer* v. *Frasch*, 7

Wash. 504, 35 Pac. 409; *Quimby* v. *Dill,* 40 Me. 528; Heaton
v. *Ainley,* 108 Iowa, 112, 78 N. W. 798; 20 Cyc. 453; *Wind-
haus* v. *Bootz,* 92 Cal. 617, 28 Pac. 537.

Assuming that counsel's position is correct as to his state-
ment of the law, still the evidence in this case justifies the
conclusion that these buildings were placed upon the lot by
J. S. Newman with the intent to place them beyond the
reach of his creditors. In fact, no other conclusion can be
drawn from an examination of his testimony. As we have
pointed out, his testimony in the district court does not
correspond with the testimony he gave in the bankruptcy
proceedings with reference to the money used in the con-
struction of the buildings, and the testimony given by the
son does not correspond to the testimony of the father given
at either place.

Plaintiff contends that no other construction can be given
[2-4]   to the findings of the district court than that J. S.
Newman owns the buildings and Sam Newman owns the lot;
that, where the ownership of land is in one person and the
thing affixed to it is in another, and in its nature is capable
of severance without injury to the former, the latter cannot
in contemplation of law become a part of the former, but
must remain distinct property, to be used and dealt with
as personal estate only, citing *Nigro* v. *Hatch,* 2 Ariz. 144,
11 Pac. 177; *Ingalls* v. *St. Paul M. & M. Ry. Co.,* 39 Minn.
479, 12 Am. St. Rep. 676, 40 N. W. 524; and that the at-
tachment was made in this case in the manner provided by
subdivision 1 of section 6662, Revised Codes of 1907, now
section 9262, Revised Codes of 1921, and not in accordance
with subdivisions 3 and 5 of said section, and that there-
fore there is no valid attachment upon the buildings or im-
provements upon said lot, as the attachment and levy were
made in the manner provided for the attachment of real
estate, and not in the manner provided for the attaching of
personal property; that this property stood in the name of
Sam Newman, and not in the name of J. S. Newman, and

therefore the attachment should have been made as provided in subdivision 2 of said section.

Assuming, for the purposes of this case, and as counsel contends, that the two buildings are personal property, yet the plaintiff's position is untenable for three reasons: First, in the court below the case was tried upon the theory that the writ of attachment was regular and properly issued and levied, and became a lien upon the property, and the only question presented and the only issue raised was the ownership of the property; second, since the plaintiff is not the owner of the improvements upon the lot, he is not in a position to complain of the writ or the levy thereunder, in so far as it relates to the improvements; third, the plaintiff's cause of action is based upon the levy of said writ. His complaint is that the writ of attachment constitutes a cloud upon his title and for that reason he asks in his complaint to have it removed. If, as he now contends in his brief, it constitutes no lien upon the property because it was improperly or irregularly levied, then his complaint states no cause of action, and for that reason the judgment of the lower court should be sustained. (*Johnson* v. *Lincoln County*, 50 Mont. 253, 146 Pac. 471; *Heavilin* v. *O'Connor*, 61 Mont. 507, 202 Pac. 1115.)

Sections 8733 and 8734, Revised Codes of 1921, are applicable to this case and are as follows:

"A written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled."

"An instrument, the invalidity of which is apparent upon its face, or upon the face of another instrument which is necessary to the use of the former in evidence, is not to be deemed capable of causing injury, within the provisions of the last section."

These sections were construed in *Hicks* v. *Rupp,* 49 Mont. 40, 140 Pac. 97, and with reference to them the court said: "These provisions, taken together, clearly define the rule, with its limitations, under which the equitable jurisdiction of the court may be invoked. The instrument in question must be in writing and must be of such a character that, if left outstanding, it will menace with injury the person against whom it is void or voidable; hence, if its invalidity appears directly or constructively upon its face, the court may not interfere."

Judgment in favor of the defendant herein, the Association of Credit Men, and against J. S. Newman, was entered November 28, 1916, and the record now shows an execution thereon was returned unsatisfied in the sum of $3,269.97. "In many, if not most, of the states, recovery of judgment and return of an execution *nulla bona* is sufficient to enable the creditor to invoke the aid of equity to reach property fraudulently conveyed by his debtor." (*Koopman* v. *Mansolf,* 51 Mont. 48, 149 Pac. 491.)

**[5]**

We are therefore of the opinion that the improvements, consisting of the two-story brick building and warehouse of the value of $20,000, were placed upon said lot 7 with the intent on the part of both J. S. and Sam Newman that they should be the property of J. S. Newman, and that no right, title or ownership should vest in Sam Newman; that credit was extended to J. S. Newman by defendant's assignors by reason of various representations made by both J. S. and Sam Newman that the father owned the property; that the writ of attachment levied by the defendant in this case, pleaded in plaintiff's complaint, is a valid lien upon the said two-story brick building and warehouse situated upon said lot 7, and rents and profits therefrom, for the amount due under said judgment in favor of said defendant herein, Association of Credit Men, and against J. S. Newman; that said Sam Newman holds the legal title to said buildings in trust for J. S. Newman; that said buildings on said lot

should be sold as provided by law at execution sale to satisfy the said judgment.

, We therefore recommend that the judgment appealed from be affirmed and that the district court enter a further decree · and judgment directing the sale of said buildings on said lots as set forth in the opinion herein.

PER CURIAM: For the reasons given in the foregoing opinion, the judgment appealed from is affirmed and the district court is ordered to enter a further decree and judgment directing the sale of the buildings on said lot, as indicated in the foregoing opinion.

*Affirmed.*