NORTHERN MONTANA STATE BANK, RESPONDENT, *v.* COLLINS ET AL., APPELLANTS.

(No. 5,196.)

(Submitted May 7, 1923.  Decided June 21, 1923.)

[216 Pac. 330.]

*Equity—Fraudulent Conveyances—Husband and Wife—Complaint—Insufficiency.*

1. In an action by a judgment creditor to set aside a conveyance by the debtor, an insolvent, to his wife on the ground that it had been made with intent to hinder, delay and defraud creditors, the complaint must allege that plaintiff had secured a lien on the property by issuance and return of execution unsatisfied; in the absence of such allegation no cause of action is stated.

*Appeal from District Court, Chouteau County; John W. Tattan, Judge.*

SUIT by the Northern Montana State Bank against F. W. Collins and another. Judgment for plaintiff and defendants appeal from the judgment. Reversed and remanded.

Cause submitted on briefs of Counsel.

---

1.  Creditor's bill to reach property fraudulently conveyed, see notes in Ann. Cas. 1914B, 948; 23 L. R. A. (n. s.) 26.

*Mr. A. G. Waite, Mr. E. J. McCabe and Mr. H. S. McGinley,* for Appellant.

This is a creditor's bill and this court has held: "That a creditor cannot invoke the aid of a court of equity to reach assets of his debtor which have been fraudulently conveyed, without having acquired a lien upon them by appropriate proceedings at law, or unless a trust exists therein in his favor; and that, in case of personal property, an interest not capable of manual delivery, a lien must be fixed upon them by levy of process in the manner pointed out by statute." (*Koopman* v. *Mansolf,* 51 Mont. 48–56, 149 Pac. 491; *Wilson* v. *Harris,* 21 Mont. 374, 54 Pac. 46; *Wyman* v. *Jensen,* 26 Mont. 227, 67 Pac. 114; *Raymond* v. *Blancgrass,* 36 Mont. 449, 93 Pac. 648; 10 R. C. L. 10.) Tested by these requirements the complaint wholly fails. It contains no allegation that a lien upon the property involved was created by attachment, or the levy of any execution, or that a trust existed therein in favor of the plaintiff. "A judgment, though docketed, is not a lien upon a secret interest of a judgment debtor in real estate appearing on the records in the name of another, whether the debtor is a *cestui que trust* or a fraudulent grantor." (*McMillan* v. *Davenport,* 44 Mont. 23, 118 Pac. 756; *Koopman* v. *Mansolf,* 51 Mont. 48, 149 Pac. 491.)

Before equity can be invoked in cases of this character, it must first be shown that the remedies at law wholly fail, and that an execution has been issued and returned unsatisfied in whole or in part, except where a trust exists in favor of the creditor. (*Wyman* v. *Jensen; Koopman* v. *Mansolf; Raymond* v. *Blancgrass, supra; Ryan* v. *Spieth,* 18 Mont. 45, 44 Pac. 403.)

*Messrs. Stranahan, Towner & Lynch,* for Respondent.

In section 144, 12 R. C. L., it is said: "The requirement of the issuance of execution and its return *nulla bona,* before

invoking the equitable remedy to set aside a fraudulent conveyance, will usually be relaxed if it be shown that such procedure would be vain. So the impossibility, impracticability or futility of exhausting the remedy at law has been held to be a sufficient excuse for not doing so. It has been said that insolvency may be an excuse for not issuing execution. An exception in the case of insolvency, however, does not seem consistent with the general rule, for a debtor may be unable to meet his obligations and still be possessed of enough tangible property to satisfy the creditor's claim. If, however, by insolvency it is meant that the debtor has no property subject to levy, then the exception to the rule which excuses issuance and return of exception is proper." (See, also, Freeman on Execution, sec. 429, p. 711; *Ryan* v. *Spieth,* 18 Mont. 45, 44 Pac. 403; *First Nat. Bank* v. *Dawson,* 127 Ill. App. 295; *James H. Rice Co.* v. *McJohn,* 244 Ill. 264, 91 N. E. 448; *Crandall* v. *Lee,* 89 Wash. 115, 154 Pac. 190; *Ziska* v. *Ziska,* 20 Okl. 634, 23 L. R. A. (n. s.) 1, 95 Pac. 254; *Fleischner* v. *First Nat. Bank,* 36 Or. 553, 60 Pac. 603; *Taylor* v. *Dunlap Stone & Lime Co.,* 38 Kan. 547, 16 Pac. 751; *O'Brien* v. *Stambach,* 101 Iowa, 40, 63 Am. St. Rep. 368, 69 N. W. 1133; *The Holloday Case,* 27 Fed. 830; *Turner* v. *Adams,* 46 Mo. 95; *Alford* v. *Baker,* 53 Ind. 279.) Another line of decisions holds that the action is merely in aid of execution as removing an obstruction from the legal enforcement of the judgment. (*Schofield* v. *Ute Coal & Coke Co.,* 92 Fed. 269, 34 C. C. A. 334; *Wadsworth* v. *Schisselbauer,* 32 Minn. 84, 19 N. W. 390; *James H. Rice Co.* v. *McJohn,* 244 Ill. 264, 91 N. E. 448; *Wilson* v. *Addison,* 127 Mich. 680, 87 N. W. 109; *Moore* v. *Bruce,* 85 Va. 139, 7 S. E. 195; *Harrison* v. *Battle,* 109 N. Y. 345, 16 N. E. 541.)

From the foregoing authorities we maintain that return of execution *nulla bona* is not necessary and the solvency of the debtor can be shown by other evidence, and further, in this case such return of execution *nulla bona* was shown,

but due to no fault or cause on the part of the plaintiff and respondent, but solely through error on the part of the sheriff's deputy, such return was not allowed to be introduced in evidence to prove insolvency of the debtor.

MR. JUSTICE COOPER delivered the opinion of the court.

In April, 1913, the defendant Blanche E. Collins came to Big Sandy from the state of South Dakota. She purchased lot 7 in block 4 of the town site and put the title in the name of her husband, F. W. Collins. In the spring following, Collins built a blacksmith-shop upon the lot, equipped it with tools and machinery, and engaged in a general blacksmithing business therein. Later he enlarged the enterprise by the addition of machinery and equipment for the repair of automobiles and continued to conduct the business there, and was so doing at the time of the trial. Soon thereafter he acquired a homestead from the government and later purchased another piece of real property known as the Robertson ranch. Both of these farms he conducted in his own name, purchased horses and cattle, and acquired machinery and equipment in connection with its operation. During practically all of this time he did his banking business with the plaintiff and kept an account in the bank. On the strength of his ownership of this property, including the lot and the business, the plaintiff extended him credit from the start and continued to assist him to finance his operations until October 15, 1920. According to the testimony none of his business operations were profitable, but resulted in the incurrence of large indebtedness to various persons, which, at the time this action was commenced, amounted to about $2,500, exclusive of some $6,000 secured by a mortgage upon the ranch property. His wife kept a millinery store in the town of Big Sandy, conducted the business in her own name, and kept a separate banking account in connection with her business. On October 17, 1920, after he had transferred to his wife all the other real

and personal property he had acquired during his residence in Montana and then owned by him, he gave her a deed purporting to convey lot 7 in consideration of an alleged indebtedness to her of $1,700 or $1,800.

The complaint alleges the recovery and docketing of a judgment against the defendant F. W. Collins on January 25, 1921, in favor of the plaintiff in the sum of $1,071.73, interest, costs and attorneys' fees, the issuance of an execution on March 9, and its return unsatisfied on March 14; that F. W. Collins was insolvent, except that on October 15, 1920, he was the owner and in possession of lot 7 of block 4 of the town site of Big Sandy, of the value of $2,500; that, by reason of his ownership thereof and the belief on the part of the plaintiff that he was solvent, it extended him credit in the sum of $833; that on the date last named, "without adequate consideration, with intent to hinder, delay, and defraud his creditors, including plaintiff, he secretly conveyed to his wife, Blanche E. Collins," the property mentioned. The prayer is that the conveyance be adjudged null and void; that the property be sold, and the proceeds of the same applied in payment of plaintiff's judgment against defendant F. W. Collins.

The answer of Blanche E. Collins denies all the averments of the complaint and alleges affirmatively that she is a married woman, carrying on a separate business; that she is the sole owner of property which has not been acquired from her husband, and that she still has her separate bank account; that on August 30, 1913, she purchased lot 7 and caused the title to be conveyed to her husband, who was not in Montana when she purchased the lot and had no knowledge of its purchase by her, nor was it bought at his request or suggestion; that he has not paid her the amount of the purchase price of the lot nor any part thereof; that he is now indebted to her in a large sum of money loaned by her to him long prior to the conveyance of the lot; and denies that the deed was made with intent to hinder, delay or defraud

any of the creditors of F. W. Collins.   These averments were denied by the reply.

The trial resulted in a judgment setting aside the conveyance to the wife upon the ground that Blanche E. Collins knew that the conveyance was made to her with intent to hinder, delay and defraud the creditors of Collins; that he was insolvent and was not the owner of property out of which plaintiff's judgment could be satisfied, except lot 7 and the improvements thereon; that the judgment was a lien upon the property; and that the sheriff sell the same and out of the proceeds satisfy the judgment, including the costs.   Defendant Blanche E. Collins appeals.

At the beginning of the trial, counsel for defendants admitted that judgment had been obtained, but objected to the admission of any evidence in the cause upon the ground that the complaint did not state a cause of action.

The clerk of the court testified that judgment was rendered January 25, 1921, and execution issued March 9.   However, it appeared that execution never reached the sheriff and was never returned as the statute requires.   The court excluded the return on the execution, but upon the evidence in the cause held that the conveyance was made with intent on the part of both defendants to defraud the creditors of Collins.

The argument for appellant is that, before equity can [1] be invoked, it must be shown that the remedies at law wholly fail and that an execution has been returned unsatisfied, except where a trust exists in favor of the creditor. Counsel for respondent oppose this assertion with the argument that the return of an execution *nulla bona* is not necessary because of the insolvency of Collins and the palpable fraud exhibited in the transfer to his wife.   Does the plaintiff's failure to show that it has acquired a specific lien upon the property defeat its right to prevail on this appeal?

Courts of equity afford their aid to enable creditors to obtain payment of their judgments only when a fruitless

attempt has been made to collect the debt and legal remedies have been. exhausted. To this doctrine this court has always been committed. It announced the rule in *Wilson* v. *Harris,* 21 Mont. 374, 54 Pac. 46. Said Mr. Justice Pigott at pages 401 and 402, of 21 Mont., at page 54 of 54 Pac.: "An adjudicated claim must first be shown by the creditor; he must next show that he has pursued and exhausted his remedy at law, or that under the circumstances he had none to exhaust; and he must also show, in all cases like the one at bar, that he has some lien upon specific property, or some specific and definite rights in respect of it. The doctrine governing this class of equitable remedies is well stated by Mr. Bump, in section 535 of his Treatise on Fraudulent Conveyances. His statement of the rule is supported by the numerous authorities cited in the note. He says: 'A fraudulent transfer is valid against all persons except those who proceed to appropriate the property by due course of law to the satisfaction of the grantor's debts. As it is valid against a simple contract creditor, such creditor cannot ask the aid of a court of equity to set aside the transfer, for it does not interfere with his rights. Equity has jurisdiction of fraud, but it does not collect debts. A creditor must establish his demand at law, and obtain a lien upon the property, before the transfer interferes with his rights, or he has any title to claim relief in equity. No creditor can be said to be delayed, hindered or defrauded by any conveyance until some property out of which he has a specific right to be satisfied is withdrawn from his reach by a fraudulent conveyance.' "

The rule in *Jones* v. *Green,* 1 Wall. 330, 17 L. Ed. 553 [see, also, Rose's U. S. Notes], was also approved and adopted. In that case two plaintiffs who had recovered judgment, charged that the defendant, while insolvent, had procured a conveyance of realty to be made to one Jones, who held the property in trust for him. The answer denied that execution had been issued and returned unsatisfied, and

there was no sufficient proof that it had been. That is the situation in the present case. The following is Mr. Justice Field's language: "The objection that the complainants have not shown any attempt to enforce their remedy at law is fatal to the relief prayed. A court of equity exercises its jurisdiction in favor of a judgment creditor only when the remedy afforded him at law is ineffectual to reach the property of the debtor, or the enforcement of the legal remedy is obstructed by some encumbrance upon the debtor's property, or some fraudulent transfer of it. * * * In the second case, the equitable relief sought rests upon the fact that the execution had issued, and a specific lien had been acquired upon the property of the debtor by its levy, but that the obstruction interposed prevents a sale of the property at a fair valuation. It is to remove the obstruction, and thus enable the creditor to obtain a full price for the property, that the suit is brought."

The opinion also quoted with approval the following from *Robert* v. *Hodges,* 16 N. J. Eq. 304: "But all the cases proceed upon the principle that the judgment creditor, in order to be entitled to the aid of a court of equity in enforcing his remedy by removing obstructions from his path, must have acquired title to, or a lien upon, the specific thing against which he seeks to enforce his judgment. * * * Unless he has established his title to, or lien upon, the property of his debtor, he has no right to interfere with his debtor's disposition of it." (See, also, Pomeroy's Equity Jurisprudence, 4th ed., secs. 2303, 2305–2310.)

In the *Wilson-Harris Case, supra,* the doctrine laid down in *Ryan* v. *Spieth,* 18 Mont. 45, 44 Pac. 403—to which the plaintiff turned after the exclusion of the return by the court—was explained and approved. In that case the surviving partner of the firm of Spieth & Krug during the life of Krug had conspired with his wife, Barbara Spieth, to get possession of all the assets of the firm. After the death of Spieth it was found that his wife, as administratrix of his

estate, had obtained possession of all the real and personal property of the partnership and claimed right and title thereto. The assets amounted to $40,000, the debts to about $25,000. It was objected that, because the complaint did not allege the issuance and return of an execution unsatisfied, no cause of action was stated therein. Of the principle so invoked, Justice De Witt said: "Whenever a creditor has a trust in his favor, the issuing of an execution, and its return showing the judgment to be unsatisfied, are not necessary prerequisites to equitable interference for the purpose of uncovering, reaching, and having applied to his judgment, property fraudulently disposed of and concealed, concerning which the trust exists."

The trust referred to no doubt was the one which grew out of the partnership relation between Spieth and Krug. The method pursued in that case was the only one by which the trust fund could be reached, for simple contract creditors have no legal lien on the assets of a partnership. (1 Rowley on Partnership, sec. 526.) In section 1046 of the fourth edition of Mr. Pomeroy's work on Equity Jurisprudence it is said that courts regard partnership property, after an insolvency or dissolution of the firm and in the process of winding up its affairs, as a trust fund for the benefit of the firm creditors—sacredly set apart for the payment of partnership creditors—and that they have a lien upon it for their own security; and further, where through breach of the fiduciary duty, the property has been wrongfully appropriated and legal title to it acquired in the names of the partners, it is regarded as "beyond the reach of creditors through ordinary legal means."

In *Koopman* v. *Mansolf,* 51 Mont. 48, 149 Pac. 491, after stating the effect of the decisions of this court from *Wilson* v. *Harris, supra,* to *McMillan* v. *Davenport,* 44 Mont. 23, Ann. Cas. 1912D, 984, 118 Pac. 756, to be that a judgment, though docketed, was not a lien upon the secret interest of the judgment debtor in real estate appearing on the record

in the name of another, whether the debtor be a *cestui que trust* or a fraudulent grantor, Chief Justice Brantly closed his review of the law as follows: "In many, if not in most, of the states, recovery of judgment and return of an execution *nulla bona* is sufficient to enable the creditor to invoke the aid of equity to reach property fraudulently conveyed by his debtor. In view of the foregoing decisions, however, and the further fact that all interests of the judgment debtor in real estate, whether recorded in his name or not, are subject to attachment and execution (Rev. Codes 1907, secs. 6662, 6821 [now 9262 and 9424, respectively]), the question arises whether or not, in this state, in order for a creditor to obtain relief in this class of cases, he must not allege and prove that he has secured a lien by causing attachment or execution to be levied. If this is so, the complaint in this case does not state a cause of action. Nor does the evidence make a case entitling plaintiffs to any relief, because it only shows that plaintiffs are judgment creditors. The question has never been definitely decided by this court. Inasmuch as this is so, and inasmuch as it was not decided by the trial court and is not discussed in the briefs of counsel, we shall not undertake to decide it, but submit it for consideration by court and counsel when the case again reaches the trial court."

The point reserved in the *Mansolf Case* until now has not been presented to this court. In order that the matter may now be removed from doubt, we now hold that the complaint herein must allege that the judgment creditor has secured a lien by causing attachment or execution to be levied on the property attempted to be conveyed in fraud of his rights. This is in harmony with the weight of authority in states having statutes like our own, and accords with the reasoning in the former opinions of this court. Upon a sufficient showing of the facts, a court of equity will cancel the fraudulent conveyance, and the plaintiff may then again take out execution and have the property sold to satisfy his judgment.

(*Webster* v. *Clark,* 25 Me. 313; *Dana* v. *Haskell,* 41 Me. 25; *Griffin* v. *Nitcher,* 57 Me. 270.)

The judgment of the district court is that the deed of Collins to his wife, purporting to convey lot 7 to her is "void and of no force or virtue" as against the lien of plaintiff, under and by virtue of that certain judgment in favor of the plaintiff and against F. W. Collins rendered January 25, 1921. This is contrary to the decisions of this court.

For the reasons stated, the judgment is reversed and the cause remanded, for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY, GALEN and STARK concur.